(No. 31952.— )
JOHN DOWNEY *et al.,* Appellants, *vs.* CHARLOTTE V. GRIM-SHAW *et al.,* Appellees.

*Opinion filed September 21, 1951.*

CAMPBELL, CLITHERO & FISCHER, of Chicago, and RATHJE & WOODWARD, of Wheaton, for appellants.

ROBERT J. SCOTT, of Glen Ellyn, and J. EDGAR KELLY and THOMAS A. MATTHEWS, both of Chicago, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

John Downey, Russell Gartley, Norman McBride, Thomas Power, and Donald H. Proctor, as plaintiffs, filed their complaint in the circuit court of Du Page County, seeking an injunction to restrain Charlotte V. Grimshaw and Motor Vehicle Casualty Company, record owner and contract purchaser, respectively, from building an office building in a district zoned for residential purposes under the zoning ordinance of the village of Glen Ellyn. Subsequently, the defendants filed a complaint naming the plaintiffs, the village of Glen Ellyn and others as defendants, praying for a declaratory judgment that an ordinance passed by. the village board granting a variation to the application of the zoning ordinance be declared valid. The trial court ordered the two causes consolidated, the defendant's complaint to stand as a counterclaim to the original complaint. The court below entered a decree dismissing the original complaint and granted the relief prayed in the counterclaim. The original plaintiffs bring the cause on appeal directly to this court, the circuit court having certified that the validity of a village ordinance is involved.

The Glen Ellyn zoning ordinance was first adopted in 1921 and amended from time to time thereafter, the last amendment having been adopted May 11, 1942. The village was thereby zoned into several districts, including class "A" residence districts and class "C" local business districts. The property in question, herein referred to as the "Grimshaw property," is in a class "A" district.

Charlotte Grimshaw filed a petition requesting a variation of the zoning ordinance to permit the erection of an office building on her property. The zoning board of appeals, after having given proper notice and after public hearings, unanimously recommended granting the variation. The matter was referred to the village board and that body voted to grant the variation. Subsequently, the village board passed an ordinance granting a variation of application of the zoning ordinance to permit the construction of a one-story office building on the Grimshaw property by the contract purchaser.

A review of the legislative history discloses that the first act granting zoning powers in Illinois was adopted in 1919 and did not confer any power to grant variations. In 1921 a new act was substituted and section 4 thereof provided that the regulations imposed and the districts created thereunder could be varied or amended by the governing body of the city or village. In 1923 the variation power was taken out of section 4 and transferred to section 3. Under the 1923 amendment, the application of the regulations might be varied by the board of appeals in harmony with their general purpose and intent and in accordance with general or specific rules contained in such regulations, and on appeals from decisions of an administrative officer the board could relieve from practical difficulties or unnecessary hardships in the way of carrying out the strict letter of a zoning ordinance. (Smith-Hurd's Ill. Rev. Stat. 1923, chap. 24, sec. 68; Callaghan's Rev. Stat. chap. 24, sec. 523.) The statute was again amended in 1933 whereby

the board of appeals could, by ordinance, be authorized to grant variations in substantially the same language as formerly contained in section 3 with certain added qualifications, and an alternative provision was inserted authorizing the corporate authorities (city council or village board) to also grant variations. An additional requirement was added, applicable both to the board of appeals and the governing body, that every variation shall be accompanied by a finding of fact specifying the reason therefor. In 1941, the act, as amended in 1933, was in substance incorporated in the codification of the Cities and Villages Act. Ill. Rev. Stat., chap. 24, par. 73-4.

Appellants contend that the variation section of the zoning statute (Ill. Rev. Stat. 1949, chap. 24, par. 73-4,) is unconstitutional as being an unlawful delegation of legislative power, on the authority of *Welton* v. *Hamilton,* 344 Ill. 82, and *Speroni* v. *Board of Appeals,* 368 Ill. 568.

In the *Welton case,* which was the first case to test the constitutionality of the variation provisions of the statute, the board of appeals of the city of Chicago overruled an order of the building commissioner and granted a variation in the application of the volume district regulations of the city's zoning ordinance. We there held the variation provision was unconstitutional and, at page 95, said, "The part of section 3 which purports to authorize the board of appeals to vary or modify the application of any of the regulations or provisions of the zoning ordinance relating to the use, construction or alteration of buildings or structures or the use of land is arbitrary and unconstitutional because it is a delegation to an administrative body of the power of legislation, which can be exercised only by a legislative body." It should be observed that at the time of the *Welton* decision the zoning act then in force was as amended in 1923 and prior to the amendment of 1933, and the statute then made no provision for the granting of a variation by the corporate authorities. In the case at bar,

the variation was granted by an ordinance of the village board under the alternate provision of the statute and not by the board of appeals. It is our opinion that the *Welton case* is not applicable here and that the act as amended, at least in so far as it authorizes variations by the governing body, is a valid and constitutional enactment. We are not here obliged to pass upon the question of whether the act, after the 1933 and subsequent amendments, is free from the objections pointed out in *Welton* v. *Hamilton,* 344 Ill. 82, to the granting of variations by a board of appeals.

The case of *Speroni* v. *Board of Appeals,* 368 Ill. 568, was an appeal from the refusal of the board of appeals to grant a variation. While it was decided some time after the amendment of 1933, the decision is definitely based on the act in effect prior to such amendment. What we have said about *Welton* v. *Hamilton,* 344 Ill. 82, applies as well to the *Speroni case.*

Appellants further contend that the village board failed to make a finding of fact specifying the reasons for making the variation, and that, since the variation ordinance was not accompanied by such a finding of fact, it failed to comply with the statute and was null and void. The record reveals that the board of appeals made and unanimously adopted a resolution and findings of fact setting forth their reasons for recommending that the variation be granted and same were presented to and filed with the village board. The variation ordinance specifically relates that the application of the zoning ordinance be varied "in accordance with and in the manner recommended by the zoning board of appeals." The reference in the ordinance to the recommendation, of which the findings of fact were a part, was a substantial and sufficient compliance with the statute.

The evidence and exhibits show that the Grimshaw property is an irregularly shaped tract, the west line of which is a straight line running almost due north and south, flaring westerly near the north end, and the east

line extending in a northwesterly direction; that it is approximately 300 feet long, and of a width of 155 feet on the south side and approximately 99 feet on the north side. The tract is about level on the south frontage and rises to a height of 12 feet approximately 100 feet north of Crescent Boulevard and then drops off sharply to the north to about 20 feet below the highest level.

It further appears that the Grimshaw property is bounded on the south by Crescent Boulevard, a heavily traveled road between the villages of Glen Ellyn and Lombard, and on the east by Ellyn Avenue; that Crescent Boulevard, from the southeast corner of the Grimshaw property, bears southwesterly to the west end of the same block, at which point it intersects the rights of way of two railroads at Park Boulevard and parallels them practically due west through the heart of the central local business district; that Ellyn Avenue runs north, bearing slightly to the east, all the way through the village; that north of the Grimshaw property a drive called Ellyn Court extends west from Ellyn Avenue and ends in a circle; and that eight lots, each approximately one-fifth the size of the Grimshaw property, face Ellyn Court from the north and south.

It further appears that immediately west of the southerly half of the Grimshaw property is the residence of the plaintiff, Donald H. Proctor, and to the north, on Ellyn Court, are six residences, four of which are owned and occupied by the remaining plaintiffs; that immediately west of the Proctor property is a narrow strip of vacant land and a public library fronting on Park Boulevard; that east of the Grimshaw property is the high school and north of that is the football field, track and softball diamond of the high school. There are two tracts north of Ellyn Court, the first one of which belongs to the high school and the second one is a proposed purchase by such high school. To the south of the Grimshaw property is a park of consider-

able width at the east end running down to a point at the west end opposite the Grimshaw and Proctor tracts. There is located in the triangular park a baseball diamond, tennis courts, a girl scout cabin and a community house. Adjacent and contiguous to the south border of the park lie the rights of way of two railroads over which more than 100 trains pass daily. South of and adjoining said railroads are located a manufacturing plant and lumberyard. Across the street to the west of the public library is the business district, upon which is located oil stations, a medical and other business buildings.

Upon a review of the situation existing in the area, it will be observed that approximately the southerly one-third of the block in which the Grimshaw property is located, together with most of the territory to the east, west and south, is used for purposes other than class "A" dwellings. It is true that the library, high school, park, community house and baseball diamond are permitted uses of property in the class "A" district; nevertheless, they are not used for the purposes for which the class "A" residence district primarily was created. The southern part of the block, in so far as residences (other than the Proctor property) are concerned, may be likened to a peninsula extending south and away from the portion of the residential district north of the railroad.

The board of appeals, in their findings of fact in compliance with the provisions of the zoning ordinance which set out certain regulations for the granting of variations, found that the proposed office building was not of a height and size to impair an adequate supply of light and air to adjoining properties; that by reason of the unusual topography the property was not suitable for single-family dwellings; that the property was not suitable for single-family residences because of its domination by the high school across the street to the east and the public park to the south which adjoins the railroads; that the failure to grant

the variation would amount to practically a confiscation of the property; that the granting of the variation would not unreasonably diminish or impair property values within the established surrounding areas; and that the granting of the variation would not unreasonably increase traffic congestion or endanger the public safety, morals, comfort or welfare.

Appellants strenuously contend that the proposed building, 122 feet long by 74 feet in width and of a height at the eaves of 26 feet, would interfere with the light and air of the Proctor residence and the residences on Ellyn Court; that the same rolling wooded terrain extends through the entire general area and is not peculiar to the Grimshaw property; that while the Grimshaw tract is not rectangular, it is not so situated as to be unusable for single-family dwellings; that the nearness to the high school and park is not exceptional to the property in question; that the Grimshaw property is worth approximately $5000 for residential purposes and $20,000 for the use proposed, and that the enhancement in value for business use would be at the expense of value of the surrounding property; and that the findings that traffic congestion would not be unreasonably increased nor the public safety endangered were mere negative findings.

In ascertaining whether a particular zoning ordinance is in the interest of the public welfare, each case must be determined upon its own peculiar facts. (*Braden* v. *Much*, 403 Ill. 507; *Johnson* v. *Village of Villa Park*, 370 Ill. 272; *Wesemann* v. *Village of La Grange Park*, 407 Ill. 81.) Where there is room for a legitimate difference of opinion concerning the reasonableness of a particular zoning ordinance, the finding of the legislative body will not be disturbed. *Jacobson* v. *Village of Wilmette*, 403 Ill. 250; *Mercer Lumber Cos.* v. *Village of Glencoe*, 390 Ill. 138.

The question here is not whether the action of the village board in adopting the variation ordinance was rea-

sonable, but whether there is a legitimate difference of opinion on that question.

The record discloses that there was some available unoccupied frontage in the business district but it was clear that there was no unoccupied tract of sufficient size to accommodate the building sought to be placed upon the Grimshaw tract. If sufficient frontage could be acquired in the business district, and there was no evidence that it was available, it would have been necessary to acquire several tracts and demolish the existing structures thereon. It would appear that there is at least a fair difference of opinion as to whether the detriment to appellants would outweigh the detriment to appellees, who would be practically excluded from building their proposed building within the village limits. There is nothing in the record to indicate an available site closer to the existing business district.

Another factor to be considered is the degree in which the values incident to the property may be diminished in the event the owner of the tract could not use it for the purpose for which it was acquired. The evidence showed that the construction of such a building would decrease the value of surrounding property from nothing up to 50 per cent in the future. Here, again, there was a difference of opinion between the witnesses who testified relative to that point.

Appellants contend that the property owners have the right to assume that no change will be made in a district unless required for the public good or unless changing conditions require it. At the time the contract purchaser applied for a building permit the variation ordinance had already been passed to permit such construction and it had the right to rely on the same rule. *Braden* v. *Much,* 403 Ill. 507.

Even though we might concede that the breaking down of the zoning restrictions by variation or amendment is

deplorable, nevertheless, this court has repeatedly said that it will not constitute itself a zoning commission and that all questions relative to the wisdom or desirability of particular restrictions in the zoning ordinance, or the variation or amendment thereof, rest with the legislative bodies creating them, and that a finding will not be disturbed where there is ground for legitimate difference of opinion. *Burkholder* v. *City of Sterling,* 381 Ill. 564; *Harmon* v. *City of Peoria,* 373 Ill. 594.

The point is raised by appellants that the granting of a variation permitted the changing of a district by indirection in the guise of a variation. We do not see the merit in that contention. Section 8 of the act (Ill. Rev. Stat. 1949, chap. 24, par. 73-8,) provides that the districts created by a zoning ordinance may be changed from time to time. If a district can be legally changed, and there is ample authority for same, then we fail to see why the governing bodies do not have the same authority to grant a variation. There is this difference, which we deem advantageous to appellants, that by granting a variation the village board restricted the use of the property to a particular purpose, whereas, if they had amended the ordinance reclassifying the property in question, such property could be put to any use permitted by the ordinance in the zone in which such property would have been placed. This question was discussed in *People ex rel. Miller* v. *Gill,* 389 Ill. 394, but we do not think it necessary to here discuss that case, since no relief was asked for or granted under section 8. The *Gill case* does reaffirm the principles set out in other decisions and upheld a variation by permitting construction of a portion of a building which did not conform in a residential district.

The decision of this case depends primarily upon the state of facts which have been passed upon by the board of appeals and the village board. The relief granted by the village board in granting the variation to the zoning

ordinance was in conformity with the zoning act and the zoning ordinance adopted pursuant thereto and did not deprive appellants of their constitutional rights. The decree and judgment of the circuit court of Du Page County are affirmed.

*Decree and judgment affirmed.*