GEORGE B. WARD, PLAINTIFF-APPELLANT, v. DONALD H. SCOTT, MAYOR, ET AL., CONSTITUTING THE TOWN COUNCIL OF THE TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; HOWARD WEIKEL, ET AL., CONSTITUTING THE BOARD OF ADJUSTMENT (ZONING) OF THE TOWN OF BLOOMFIELD; BROOKS C. MARTIN, BUILDING INSPECTOR OF THE TOWN OF BLOOMFIELD; AND LIGHAM CONSTRUCTION COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued September 30, 1952—Decided December 15, 1952.

*Mr. Everett M. Scherer* argued the cause for the appellant (*Messrs. Riker, Emery & Danzig*, attorneys; *Mr. George H. Callahan*, on the brief).

*Mr. Fred A. Lorentz* argued the cause for the respondent Ligham Construction Company (*Messrs. Lorentz & Stamler*, attorneys).

*Mr. Thomas J. Markey* argued the cause for the respondents, Town Council, Board of Adjustment and Brooks C. Martin, Building Inspector, Town of Bloomfield.

The opinion of the court was delivered by

JACOBS, J. The Town Council of Bloomfield granted a variance to Ligham Construction Company pursuant to a recommendation of the board of adjustment under *R. S.* 40:55–39(*d*); the Law Division sustained this action, and the ensuing appeal by the plaintiff George B. Ward has been certified to this court on its own motion.

In 1949 Economy Built Homes Corporation, a company controlled by Saul T. Ligham, purchased a large tract of land on the northeast side of Broad Street, Bloomfield, for a residential development known as Hearthstone Village. Included within this tract was property located near the busy intersection of Broad Street and Watchung Avenue and conveyed in 1950 to Ligham Construction Company, which is likewise controlled by Saul T. Ligham. This property has a frontage of 450 feet on Broad Street; 84 feet thereof nearest the aforementioned intersection is within a medium volume business zone and the remainder is within a residential zone. Further description thereof appears in the

opinion of the Law Division reported in *Ward v. Scott*, 18 *N. J. Super.* 36, 38 (1952) and need not be restated here.

In 1950 Ligham Construction Company made application to the Building Inspector of Bloomfield for a permit to erect a commercial building and off-street parking facility on its property. This application was denied and a petition of appeal was duly filed with the local board of adjustment. The petition alleged that the location of the proposed building was "adjacent to existing business and the general location is in a concentrated commercial section at the juncture of Broad Street and Watchung Avenue"; that within the neighborhood there had been and would be substantial residential development requiring additional commercial facilities; that the proposed parking lot would be the only off-street parking facility in the area and would "virtually eliminate all existing congestion in the area"; and that the proposed use would contribute to "the convenience and welfare of the ever increasing number of persons living in the general area." After hearing, the board of adjustment adopted a resolution which found "as a fact that by reason of the proximity of other commercial buildings to the lands and premises in question, that exceptional circumstances are present" justifying relief and recommended to the town council that a variance be granted. The board also found that granting the variance would "not be a substantial detriment to the public good" and would "not impair the intent and purpose of the Zoning Ordinance." On June 19, 1950 the town council approved the recommendation of the board of adjustment and directed the building inspector to issue the necessary permit.

In his complaint in the Law Division the plaintiff, a resident in the neighborhood, alleged that the actions of the board of adjustment and town council were invalid and should be set aside. Paragraph 11 set forth that Ligham Construction Company had not established "unnecessary hardship," and paragraph 15 set forth that if the Zoning Act is construed to permit the board of adjustment to recommend a

variance without a previous finding of unnecessary hardship then it is unconstitutional. In dismissing the complaint the Law Division questioned the necessity, under *R. S.* 40:55–39(*d*), of a finding of undue hardship (18 *N. J. Super.* 43) but concluded that in any event the town "did think that this was a case of undue hardship." On the plaintiff's appeal from the judgment entered in the Law Division the issues requiring our present determination are: (1) is the recent construction of *R. S.* 40:55–39(*d*) in *Monmouth Lumber Co. v. Ocean Township*, 9 *N. J.* 64 (1952), now to be rejected; (2) if not, is *R. S.* 40:55–39(*d*) to be declared unconstitutional as lacking in sufficient legislative standards to guide the board of adjustment and the municipality; and (3) did the board of adjustment make adequate jurisdictional and factual findings within the requirements of *R. S.* 40:55–39(*d*).

## I.

In the *Monmouth Lumber* case Justice Burling reviewed the history of *R. S.* 40:55–39, with particular reference to its recent extensive revision in *L.* 1948, *c.* 305 and *L.* 1949, *c.* 242. As he pointed out, subsection (c) provides that the board of adjustment may grant a variance where, by reason of the extraordinary situation or condition of the property, the strict application of the zoning restrictions would result in "peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner"; in contrast, however, subsection (d) omits the specific requirement for a showing of practical difficulties or undue hardship and provides that "in particular cases and for special reasons" the board of adjustment may recommend to the governing body of the municipality that a variance be granted. Unlike subsection (c), action taken by the board of adjustment under subsection (d) is subject to approval or disapproval by the municipality, and no variance may be permitted under either subsection unless it "can be granted

without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." See *Liemann v. Board of Adjustment, Cranford Tp.*, 9 *N. J.* 336, 341 (1952) ; *Gerkin v. Village of Ridgewood*, 17 *N. J. Super.* 472, 477 *(App. Div.* 1952), certification denied 9 *N. J.* 404 (1952).

The legislative purpose appears clear and appropriately expressed. Where the prescribed showing of extraordinary condition of the property and undue hardship is made the board of adjustment may itself, under subsection (c), grant the variance without submission to the municipal governing body. Where, however, there are "special reasons" within the contemplation of the act, the board of adjustment may, without regard to the rigid requirements of subsection (c) simply recommend a variance for approval or disapproval by the municipality. The Legislature deliberately withheld from subsection (d) the undue hardship requirement which it included in subsection (c), and we are not at liberty to disregard its clear statutory language and meaning. We now reaffirm the views fully expressed, without dissent on this issue, in the *Monmouth Lumber* case. *Cf.* Glasser, *Administrative Law*, 7 *Rutgers L. Rev.* 66 (1952), where the author notes that the New Jersey "courts this year have expressly held (to the apparent surprise of many municipal attorneys, although the statutory language would seem to be clear) that where the *recommendation* procedure of *N. J. Rev. Stat.* 40:55–39(*d*), *N. J. S. A.*, is followed by a board of adjustment, there need be no finding of unnecessary hardship." See *Beck v. Board of Adjustment of East Orange*, 15 *N. J. Super.* 554, 560 *(App. Div.* 1951).

## II.

The appellant contends that *R. S.* 40:55–39(*d*) is unconstitutional. He does not question the general right of the Legislature to delegate power to the board of adjustment to recommend a variance subject to approval or disapproval

of the municipality. *Cf. Gorieb v. Fox*, 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228 (1927). He contends, however, that such delegation to the municipal administrative agency must be accompanied by a sufficient basic standard (*Van Riper v. Traffic Telephone Workers Federation of New Jersey*, 2 *N. J.* 335, 353 (1949)), and that subsection (d) as interpreted in the *Monmouth Lumber* case fails to set forth such standard. In dealing with the question of standards it is elementary that we are not confined to the specific terms of subsection (d) but must examine the entire act in the light of its surroundings and objectives. See *Carlson v. Landon*, 342 *U. S.* 524, 72 *S. Ct.* 525, 96 *L. Ed.* —— (1952). Nor are we restricted to the ascertainment of standards in express terms if they may be reasonably implied from the entire act. See *Brandon v. Montclair*, 124 *N. J. L.* 135, 143 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940), where Justice Heher rightly noted that "A statute often speaks as plainly by inference, and by means of the purpose which underlies it, as in any other manner. That which is clearly implied is as much a part of the law as that which is expressed." See also *West Jersey and Seashore Railroad Company v. Board of Public Utility Commissioners*, 87 *N. J. L.* 170 (*E. & A.* 1915). On the present issue this wholesome doctrine may receive support not only from the general presumption of the validity of legislation (*Attorney General v. McGuinness*, 78 *N. J. L.* 346, 371 (*E. & A.* 1910)), but also from *Article IV, Section VII, paragraph* 11 of our *Constitution* of 1947 which states that the provisions of the Constitution and of any law concerning municipal corporations "shall be liberally construed in their favor."

 It is settled that the Legislature may not vest unbridled or arbitrary power in the administrative agency but must furnish a reasonably adequate standard to guide it. *N. J. Bell Tel. Co. v. Communications Workers, etc.*, 5 *N. J.* 354, 370 (1950); *State v. Wheeler Auto Driving School, Inc.*, 17 *N. J. Super.* 488, 495 (*App. Div.* 1952). But the exigencies of modern government have increasingly dictated

the use of general rather than minutely detailed standards in regulatory enactments under the police power. Thus, the Board of Public Utility Commissioners has been guided by simple standards of "public convenience and necessity" (*R. S.* 48:11–1) and "just and reasonable." *R. S.* 48:2–21. See *Fornarotto v. Board of Public Utility Commissioners,* 105 *N. J. L.* 28, 32 (*Sup. Ct.* 1928). The Commissioner of Alcoholic Beverage Control, with authority to fix prices and promulgate regulations (*Gaine v. Burnett,* 122 *N. J. L.* 39 (*Sup. Ct.* 1939), affirmed 123 *N. J. L.* 317 (*E. & A.* 1939)), has been guided by the general legislative pronouncement that the statute shall be administered in "such a manner as to promote temperance and eliminate the racketeer and bootlegger." *R. S.* 33:1–3, 39. And the Director of the Milk Control Board has been authorized to take such measures including the fixing of prices and the promulgation of regulations as may be "necessary to control or prevent unfair, unjust, destructive or demoralizing practices which are likely to result in the demoralization of agricultural interests in this State engaged in the production of milk or interfere with the maintenance of a fresh, wholesome supply of sanitary milk for the consumers of this State." See *R. S.* 4:12A–21; *State Board of Milk Control v. Newark Milk Co.,* 118 *N. J. Eq.* 504, 521 (*E. & A.* 1935); *Como Farms, Inc. v. Foran,* 6 *N. J. Super.* 306, 312 (*App. Div.* 1950). See also *Veix v. Seneca B. & L. Assn.,* 126 *N. J. L.* 314, 323 (*E. & A.* 1941); *Borough of Little Ferry v. Bergen County Sewer Authority,* 9 *N. J.* 536, 544 (1952).

Standards embodied in federal enactments and approved by the Supreme Court of the United States have been of similar breadth. See *American Power & Light Co. v. Securities and Exchange Commission,* 329 *U. S.* 90, 104, 67 *S. Ct.* 133, 91 *L. Ed.* 103, 115 (1946); *Lichter v. United States,* 334 *U. S.* 742, 786, 68 *S. Ct.* 1294, 92 *L. Ed.* 1694, 1726 (1948). In the *Lichter* case the court, in sustaining an "excessive profits" standard, listed other general standards which have been held adequate, including "just and reason-

able" (*Federal Power Commission v. Hope Natural Gas Co.*, 320 *U. S.* 591, 600, 64 *S. Ct.* 281, 88 *L. Ed.* 333, 344 (1944)), prices yielding a "fair return" (*Sunshine Anthracite Coal Co. v. Adkins*, 310 *U. S.* 381, 397, 60 *S. Ct.* 907, 84 *L. Ed.* 1263, 1273 (1940)), and "unfair methods of competition" (*Federal Trade Commission v. Keppel & Bro.*, 291 *U. S.* 304, 311, 54 *S. Ct.* 423, 78 *L. Ed.* 814, 819 (1934)). See *Davis, Administrative Law, p.* 44 (1951).

Examination of the authorities indicates that the foregoing principles have been liberally used in zoning, which is simply another illustration of the exercise of the police power. *Schmidt v. Board of Adjustment*, 9 *N. J.* 405, 414 (1952). Thus in *Gorieb v. Fox*, 145 *Va.* 554, 134 *S. E.* 914 (*Sup. Ct. App.* 1926), affirmed 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228 (1927), the zoning ordinance permitted certain variances where the proposed structures would "subserve the general welfare of the neighborhood and city." In *Carson v. Board of Appeals of Lexington*, 321 *Mass.* 649, 75 *N. E. 2d* 116 (*Sup. Ct.* 1947), the zoning board was authorized to grant exception where "the public convenience and welfare will be substantially served, and where such exception will not tend to impair the status of the neighborhood." See also *McCord v. Ed Bond & Condon Company*, 175 *Ga.* 667, 165 *S. E.* 590, 86 *A. L. R.* 703 (*Sup. Ct.* 1932). And in *Olevson v. Zoning Board of Review*, 71 *R. I.* 303, 44 *A. 2d* 720 (*Sup. Ct.* 1945) the statute permitted the town council to make special exceptions to the zoning ordinance in appropriate cases in harmony with the general purpose and intent of the zoning ordinance "or where such exception is reasonably necessary for the convenience or welfare of the public."

Applying the above to the terms of our Zoning Act, we find that the Legislature has not in any sense granted uncontrolled power to the administrative agency. It expressly set forth in *R. S.* 40:55–32 the proper zoning purposes to be achieved including the lessening of congestion, the securing of safety from fire, panic and other dangers, the providing of

adequate light and the prevention of overcrowding, the avoidance of undue concentration of population, and the promotion of health, morals or general welfare. It recognized that comprehensive restrictive regulations designed to carry out these goals, if rigidly and literally enforced without any opportunity whatever for relief in special situations, might result in serious injustice or impairment of the underlying public purposes; accordingly, it wisely adopted the policy expressed in *R. S.* 40:55–39 which enables individual variances consistent with the public interest and the purposes of the zone plan and zoning ordinance. With equal wisdom it provided specific safeguards to insure against unwarranted or arbitrary action and untrammeled administrative discretion. Thus, there must be a hearing upon adequate notice to interested parties. *R. S.* 40:55–44. If the ultimate relief is granted by the board of adjustment acting under subdivision (c), there must be a specific finding upon sufficient evidence of extraordinary condition of the property and undue hardship. If the board of adjustment is simply recommending relief under subdivision (d), there must be a specific finding of special reasons within the contemplation of the act, and the ultimate relief may not be granted without express approval of the municipal governing body. See *Downey v. Grimshaw*, 410 *Ill.* 21, 101 *N. E.* 2d 275, 279 (*Sup. Ct.* 1951), where the court suggested that such approval represents a significantly lesser exercise than the governing body's acknowledged power to rezone. Above all, there is the fixed and far reaching protective restriction in the concluding provision of *R. S.* 40:55–39 against allowance of the variance unless it can be granted "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." See *Leimann v. Board of Adjustment, Cranford Tp., supra; Gerkin v. Village of Ridgewood, supra.* Judicial review of the administrative action is afforded as of right (*Const.* 1947, *Art. VI, Sec. V, par.* 4; *Rule* 3:81–2), and our courts have not hesitated to set it aside where it

lacked reasonable basis. *Leimann v. Board of Adjustment, Cranford Tp., supra; Gerkin v. Village of Ridgewood, supra.*

█ In the light of all of the foregoing we fail to find any substantial basis for the thesis that the power delegated under subdivision (d) has not been "canalized within banks that keep it from overflowing." Cardoza, J., in *Schechter Corp. v. United States,* 295 *U. S.* 495, 551, 55 *S. Ct.* 837, 79 *L. Ed.* 1570, 1591 (1935). See *Cooper, Administrative Agencies and the Courts, pp.* 41–45 (1951); Jaffe, *An Essay on Delegation of Legislative Power,* 47 *Col. L. Rev.* 359, 561 (1947). Nor do we see any real danger that unwarranted or arbitrary action will successfully survive the ample safeguards which are ever available. It is true that in lieu of the general standards set forth the Legislature might have sought to anticipate and enumerate with fixed details all of the individual special instances in which variance would be justified. However, experience has indicated the unwisdom of this course, and an acknowledged advantage of the administrative process has been its flexibility in enabling administrators to deal justly with unanticipated as well as anticipated situations in accordance with general legislative guides. See *R. S: 33:1–74. Cf. Davis, Administrative Law, p.* 13 (1951); *Salmond, Jurisprudence* (10th ed. 1947), *p.* 52. It seems clear to us that sympathetic consideration of the applicable legal principles in the light of the problems confronting the Legislature in its endeavor to deal fairly and effectively with the entire zoning field dictates the conclusion that *R. S.* 40:55–39(d), as construed in the *Monmouth Lumber* case, embodies governing standards sufficient to withstand the constitutional attack advanced by the appellant. *Cf.* Stone, *The Common Law in the United States,* 50 *Harv. L. Rev.* 4, 18 (1936):

"We need to be reminded, too, that in the construction of statutes establishing administrative agencies and defining their powers there is little scope for the ancient shibboleth that a statute in derogation of the common law must be strictly construed, or for placing an emphasis on their particulars which will defeat their obvious purpose. Legislatures create administrative agencies with the desire and

expectation that they will perform efficiently the tasks committed to them. That, at least, is one of the contemplated social advantages to be weighed in resolving doubtful construction. It is an aim so obvious as to make unavoidable the conclusion that the function which courts are called upon to perform, in carrying into operation such administrative schemes, is constructive, not destructive, to make administrative agencies, wherever reasonably possible, effective instruments for·law enforcement, and not to destroy them."

## III.

■ Finally, we come to the issue of whether, in the instant matter, the board of adjustment made adequate findings within *R. S.* 40:55–39(*d*). The only special reason embodied in its resolution was "the proximity of other commercial buildings" to the land of Ligham Construction Company. We consider this reason, standing alone, to be insufficient. See 8 *McQuillin, Municipal Corporations* (3rd ed. 1950), *p.* 307; *Bray v. Beyer*, 292 *Ky.* 162, 166 *S. W.* 2d 290 (*Ct. App.* 1942). *Cf. Kindergan v. Board of Adjustment of River Edge*, 137 *N. J. L.* 296 (*E. & A.* 1948). Every zone plan which divides a community into districts contains residential lands adjacent to business lands; if that fact, without more, were sufficient to call for a variance, the impairment and destruction of the zone plan and zoning ordinance would progressively result, in direct violation of the concluding provision in *R. S.* 40:55–39 and decisions of this court. See *Lumund v. Board of Adjustment*, 4 *N. J.* 577, 585 (1950). The opinion of the Law Division suggests that there were accompanying considerations which were sufficient to establish special reasons which further the underlying policies expressed in the act. See 18 *N. J. Super.* 36, 40. However, none of those considerations was mentioned in the board's resolution and there were no administrative findings thereon. The vital importance of such findings on judicial review has recently been stressed by our courts (*Delaware, Lackawanna & Western Railroad Co. v. City of Hoboken*, 10 *N. J.* 418 (1952); *Family Finance Corp. v. Gough*, 10 *N. J. Super.* 13, 24 (*App. Div.* 1950)) and in

view of their absence we believe that, in the instant matter, justice will best be served by remanding the entire cause to the board for reconsideration, findings and recommendation to the town council in the light of the evidence in the record (*Giordano v. City Commission of the City of Newark*, 2 *N. J.* 585, 588 (1949)) and the principles expressed in this opinion.

Reversed and remanded.

HEHER, J. (dissenting). The essence of zoning is territorial division according to the character of the lands and structures and their peculiar suitability for particular uses, and uniformity of use within the division. *Collins v. Board of Adjustment of Margate City*, 3 *N. J.* 200 (1949); *Potts v. Board of Adjustment of Princeton*, 133 *N. J. L.* 230 (*Sup. Ct.* 1945). Such is the genius and spirit of the constitutional power and the enabling statute. It is basic in zoning as thus provided that the use restrictions be general and uniform in the particular district; an arbitrary deviation from the general rule is inadmissible. Invidious discrimination would constitute, not alone a perversion of the constitutional and statutory zoning authority, but also an infringement of the substance of due process of law and a denial of the equality of right that is secured by the Fourteenth Amendment to the Federal Constitution to persons similarly circumstanced. It is of the very nature of the constitutional and statutory zoning process that all property in like circumstances be treated alike. *Brandon v. Montclair*, 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940); *Schmidt v. Board of Adjustment of Newark*, 9 *N. J.* 405 (1952).

The State Constitution of 1947 empowers the Legislature to enact "general laws" under which municipalities other than counties "may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the nature and

extent of the uses of land, and the exercise of such authority shall be deemed to be within the police power of the State." *Article IV, Section VI, paragraph* 2. And the legislative grant of power to the local subdivisions of government is couched in the same terms. *R. S.* 40:55–30, as amended by *L.* 1948, *c.* 305, *p.* 1221. The local governing body is authorized to divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the statutory policy, and to regulate and restrict the construction and use of buildings and other structures and the use of lands within such districts, provided that "All such regulations shall be uniform for each class or kind of buildings or other structures or uses of land throughout each district, but the regulations in one district may differ from those in other districts." *R. S.* 40:55–31, as amended by *L.* 1948, *c.* 305, *p.* 1222. Such regulations shall be in conformity with a "comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population," and "shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout" the municipality. *R. S.* 40:55–32.

The exercise of the police power is *ex necessitate* contained by the rule of reason. Restraints upon property cannot be unreasonable or unduly discriminatory. The design of the cited constitutional provision was to reaffirm and define the basic sovereign police power in relation to zoning and to condition its use by definite and certain standards and principles in keeping with its essential nature; and, as recently declared by this court, however broad the police power inherent in sovereignty, its exertion by the use-zoning process

must accord with the letter and spirit of the constitutional regulation. *Schmidt v. Board of Adjustment of Newark,* cited *supra.*

The zoning provisions of the Constitution of 1947 and its predecessor are cast in identical terms, except that the former expressly includes land uses within the regulatory function; and the grant of power in the same terms is significant of an acceptance of the fundamental limitations of the earlier grant found by the old Court of Errors and Appeals in *Brandon v. Montclair,* cited *supra,* and the cases since which have given unquestioned adherence to the principle of that case.

The public right of reasonable regulation for the common good and welfare is denominated the police power. The exertion of this sovereign authority for use zoning is controlled by the constitutional and statutory delineation. The restraint laid upon the individual right—either of person or of property—may not go beyond the public need; and the means employed must be reasonable and appropriate to that end. Arbitrary or invidious distinctions are alien to the constitutional principle of zoning and, as well, the constitutional guaranty of the right of private property. *Schmidt v. Board of Adjustment of Newark,* cited *supra.*

In zoning, the question is whether the restriction constitutes a reasonable regulation of the use of the individual property in the public interest as distinguished from an arbitrary interference with the fundamental right of private ownership. The police power may not be exerted in the service of private interests under the cloak of the public good. *New Jersey Good Humor, Inc. v. Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1939); *Trenton Water Power Company v. Raff,* 36 *N. J. L.* 335 (*Sup. Ct.* 1873). See, also, *Town of Burlington v. Dunn,* 318 *Mass.* 216, 61 *N. E.* 2d 243 (*Sup. Jud. Ct.* 1945), *certiorari* denied, 326 *U. S.* 739, 66 *S. Ct.* 51, 90 *L. Ed.* 441 (1945). The statute provides for general, uniform and comprehensive use zoning; and the local legislative body is restrained accordingly, quite apart

from the operation of the constitutional guarantees against arbitrary interference with the essential right of private property.

"Special exceptions" are permissible by express statutory authority, "in accordance with the provisions" of the local zoning ordinance. *R. S.* 40:55–39*b*, as amended by *L.* 1948, *c.* 305, *p.* 1223 and *L.* 1949, *c.* 242 *p.* 779.

Exceptions to the general regulation reasonably designed to serve the public comfort and convenience or the common good and welfare in keeping with social-economic needs, rather than merely private interests, do not constitute indiscriminate spot zoning in derogation of the constitutional and statutory principle of use zoning. Special uses are allowable under the statute if not in excess of the public need or arbitrary in mode or method. But this involves the exercise of the legislative power; and, unless the discretionary administrative function in this regard be confined by a definite and certain policy and rule of action, as in *Schmidt v. Board of Adjustment of Newark*, cited *supra*, the delegation falls as essentially legislative and not transferable to the local administrator. Compare *Van Riper v. Traffic Telephone Workers' Federation of N. J.*, 2 *N. J.* 335 (1949); *State Board of Milk Control v. Newark Milk Co.*, 118 *N. J. Eq.* 504 (*E. & A.* 1935).

Such exceptions involve the exercise of an original jurisdiction created by the ordinance under the statutory power, to provide for specific cases peculiar in themselves and for special uses in the public interest that in their nature or the particular circumstances are not compatible with regulations that must be general and uniform in their sweep and operation, and to vary the application of the letter of the general rule in that behalf, conforming as nearly as may be to the spirit and intent of the zone plan and the zoning ordinance. Exceptions so contained are not at variance with the principle of zoning, but a means of accommodating zoning practice and public needs exceptional in character,

and thus reasonably to serve the common good and welfare as an integral part of the zoning process to the same end.

But the variance provided by subsection (c) of the cited section of the statute has a substantially different connotation. *R. S.* 40:55–39(c), as amended, cited *supra.* It is the means of relief where a particular lot is so uniquely circumstanced as that the application of the general rule of the ordinance, according to the strict letter, would result in "peculiar and exceptional practical difficulties" or "exceptional and undue hardship," so as to accommodate fundamental common and individual rights in the service of the essential statutory policy, and thus to avoid an arbitrary and capricious interference with the right of private property; and the measure is therefore not discriminatory in the vicious sense. In such cases, the unnecessary hardship made the basis of the remedial action inheres in the particular lot. Service of the needs of contiguous or adjacent lands or the inhabitants of the surrounding area obviously is not a ground for a variance. Thus, action under the provision is conditioned by a sufficient basic standard of conduct in keeping with the essence of the principle of zoning and the right of private property; the subject matter involves a delegable discretionary administrative function that does not transcend constitutional limitations.

But such is not the case with subdivision (d) of the cited section of the statute, providing for a "variance" to permit of a nonconforming "structure or use" in "particular cases" and for "special reasons," on the recommendation of the local administrative agency approved by the governing body.

There are two facets to the inquiry here: (1) the scope of the delegated power; and (2) the existence *vel non* of sufficiently certain standards to constitute the discretionary action purely administrative rather than legislative.

The statute limits the relief to be had under this subsection (d) to such as "can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning

ordinance." And unless the recommendatory relief procedure there provided be confined to cases of undue hardship inherent in the particular lot other than those particularized in the cited subsection (c), the true nature of a "variance," or to permissible special uses prescribed by ordinance according to certain and definite standards of conduct, e. g., *Schmidt v. Board of Adjustment of Newark*, cited *supra*, the measure is assailable as purporting to delegate power that is at once arbitrary and an invasion of the legislative domain.

Here the purported "variance" would permit a one-story commercial building, to house a supermarket and eight stores, with a large rear parking lot, on lands situate in a district zoned for residence uses contiguous to a medium volume business zone, to be constructed in connection with a housing development on a tract of which the subject lands are a part, and thereby extend the business zone along Broad Street, in Bloomfield, for a distance of 368 feet, thus constituting a change of zone boundary, a legislative function, through the medium of a variance in direct violation of the statutory injunction against a variance that would "substantially impair the intent and purpose of the zone plan and zoning ordinance."

The allowance of a variance constitutes the exercise of an "extraordinary power affecting other property owners as well as the public." *Lee v. Board of Adjustment*, 226 *N. C.* 107, 37 *S. E.* 2d 128, 168 *A. L. R.* 1 (*Sup. Ct.* 1946). As was said in that well considered case, the power to grant a variance for "unnecessary hardship" may not be used to "abrogate the very intent and purpose of the ordinance, amend, if not partially repeal, an act regularly adopted by the local Legislature, and create a means by which the entire ordinance could be frustrated at will by limitless exceptions"; and the local administrative authority

"has no power to amend the ordinance under which it functions. * * * No power to convert a residential section into a business district or to permit business establishments to invade residential

sections is conferred. Therefore it cannot permit a type of business or building prohibited by the ordinance, for to do so would be an amendment of the law and not a variance of its regulations. * * * As the new building and its use must harmonize with the spirit and purpose of the ordinance, *Bassett, Zoning,* 128, no variance is lawful which does precisely what a change of map would accomplish. It follows that the privilege to erect a nonconforming building or a building for a nonconforming use may not be granted under the guise of a variance permit. *Bassett, Zoning,* 201. Action to that effect is in direct conflict with the general purpose and intent of the ordinance and does violence to its spirit. When such substantial changes become advisable they must·be made by the legislative body of the municipality which alone can change the map and allow a business center in a residential section. It is a legislative matter and not a situation for a variance permit. *Bassett, Zoning,* 125."

See, also, *Welch v. Swasey,* 193 *Mass.* 364, 79 *N. E.* 745, 23 *L. R. A., N. S.,* 1160 (*Sup. Jud. Ct.* 1907); *Norcross v. Board of Appeal,* 255 *Mass.* 177, 150 *N. E.* 887 (*Sup. Jud. Ct.* 1926); *Prusik v. Board of Appeal of Building Department of Boston,* 262 *Mass.* 451, 160 *N. E.* 312 (*Sup. Jud. Ct.* 1928); *Thayer v. Board of Appeal of Hartford,* 114 *Conn.* 15, 157 *A.* 273 (*Sup. Ct. Err.* 1931); *Heffernan v. Zoning Board of Review of Cranston,* 50 *R. I.* 26, 144 *A.* 674 (*Sup. Ct.* 1929); *State ex rel. Nigro v. Kansas City,* 325 *Mo.* 95, 27 *S. W. 2d* 1030 (*Sup. Ct. in Banc* 1930); *Civil City of Indianapolis v. Ostrom R. & Const. Co.,* 95 *Ind. App.* 376, 176 *N. E.* 246 (*App. Ct. in Banc* 1931); *Livingston v. Peterson,* 59 *N. D.* 104, 228 *N. W.* 816 (*Sup. Ct.* 1930).

The power to create use districts is lodged in ·the local legislature; and changes in the prescribed regulations, limitations and restrictions and in the boundaries of the created districts may be had only by ordinance, conditioned upon the favorable vote of two-thirds of the governing body in case of disapproval of the proposed change by the planning board or a protest by the owners of 20% or more of lots within a prescribed area. *R. S.* 40:55–31 and 40:55–35, as amended by *L.* 1948, *c.* 305, *p.* 1221; *L.* 1948, *c.* 305, *p.* 1222.

The amendment of 1948, which incorporated subsection (d) in section 39, also modified section 35 to provide for the prior submission to the local planning board of such proposed changes in district boundaries and regulations, so that subsection (d) is necessarily subject to section 35.

And, aside from the mandate against the substantial impairment of the intent and purpose of the zone plan and the zoning ordinance, the relief permissible under the cited subsection (d) of *R. S.* 40:55–39, as amended, is not contained by a definite and certain primary administrative standard. Relief in "particular cases" and for "special reasons" where grantable "without substantial detriment to the public good" does not constitute a meaningful administrative standard or rule of action, either standing alone or considered in relation to the context, unless confined by the norm of peculiar practical difficulty and undue hardship in specific and definite terms contained in subsection (c). These are vague and indefinite terms, quite insufficient as a policy limitation upon the exercise of the delegated administrative authority. The essential distinction is between the delegation of the power to make the law and the authority or discretion directed to the execution of the law. It is requisite that there be general or specific standards adequate to guide administrative action. Undefined and unfettered discretion would offend against constitutional limitations. *State Board of Milk Control v. Newark Milk Co.*, cited *supra*.

The terms "practical difficulty" and "undue hardship" in subsection (c) are defined thus: "exceptional narrowness, shallowness or shape of a specific piece of property at the time of enactment of the regulation," or "exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property."

Here, for want of a primary standard, action within the delegated sphere is inherently and intrinsically legislative. There is in subsection (d) no declaration of policy or rule of conduct comparable to the standard of "peculiar and exceptional practical difficulties" or "exceptional and undue

hardship" embodied in definitive terms in subsection (c). Unlike subsection (c), the discretion of the administrator under subsection (d) is determined by its own conception of what constitutes "substantial detriment to the public good," provided that the "relief" given or "action" taken will not "substantially impair" the "intent and purpose" of the zone plan and zoning ordinance, a proviso common to all subdivisions of the section that in itself is vague and indeterminate as a means of charting the broad discretion of subsection (d). What relief may be afforded by means of a variance in "particular cases" and "special" circumstances without harm to the "public good" is plainly a legislative inquiry. Applications for variance permits "must be decided according to the rules; the board of appeals, inasmuch as it is not a legislative body, is not at liberty to decide what is best for the individual or for the community." *Bassett on Zoning* (1942).

Justice Jacobs suggests that there is in subsection (d) a purposed departure from the "rigid requirements" of subsection (c). But even this standard of "undue hardship" has been deemed inadequate, although now generally accepted as a sufficiently definite and certain basic standard. *Welton v. Hamilton,* 344 *Ill.* 82, 176 *N. E.* 333 (*Sup. Ct.* 1931); *Sugar v. N. Baltimore Methodist Protestant Church,* 164 *Md.* 487, 165 *A.* 703 (*Ct. App.* 1933).

An "exception" concerns the legislative process; a "variance" is generally the mode of safeguarding the individual lot owner against the invasion of his fundamental right of private property which would ensue from adherence to the strict letter of the zoning regulation, *i. e.,* hardship unnecessary to the service of the public interest in the exertion of the zoning power—such as would be greatly disproportionate to the common good accruing from the literal enforcement of the general rule. An "exception" is allowable where the conditions prescribed by the local legislative act are met. *Devereux Foundation, Inc., Zoning case,* 351 *Pa.* 478, 41 *A. 2d* 744 (*Sup. Ct.* 1945), appeal dismissed 326 *U. S.* 686,

66 *S. Ct.* 89, 90 *L. Ed.* 403 (1945). "A literal enforcement of the ordinance may be disregarded to permit a variance, while the conditions for an exception must be found in the ordinance and may not be varied." *Stone v. Cray*, 89 *N. H.* 483, 200 *A.* 517 (*Sup. Ct.* 1938).

A "variance" for undue hardship is grounded in conditions peculiar to the particular lot as distinguished from other property in the use district. General hardship is relievable only by a revision of the general rule of the ordinance or by the judicial process. *Brandon v. Montclair*, cited *supra*; *Brackett v. Board of Appeal*, 311 *Mass.* 52, 39 *N. E. 2d* 956 (*Sup. Jud. Ct.* 1942); *Young Women's Hebrew Ass'n v. Board of Standards and Appeals*, 266 *N. Y.* 270, 194 *N. E.* 751 (*Ct. App.* 1935), rehearing denied 266 *N. Y.* 672, 195 *N. E.* 376 (*Ct. App.* 1935), appeal dismissed in *Gelkom Realty Corp. v. Young Women's Hebrew Ass'n*, 296 *U. S.* 537, 56 *S. Ct.* 109, 80 *L. Ed.* 382 (1935).

A "special exception" to or a "variance" from the general regulation is permissible only in rare instances and under exceptional circumstances. This is basic in the zoning process—an attribute indispensable to its integrity. Relaxation of the general rule should be had only for the relief of specific instances, peculiar in their nature. Landowners in the particular use district and the community at large have an interest in the security of the zone plan that may not be arbitrarily set at naught. *Potts v. Board of Adjustment of Princeton*, cited *supra*; *Thayer v. Board of Appeals*, cited *supra*; *Real Properties, Inc. v. Board of Appeal of Boston*, 319 *Mass.* 180, 65 *N. E. 2d* 199, 168 *A. L. R.* 8 (*Sup. Jud. Ct.* 1946).

The power exercisable by the governing body under subsection (d) plainly was not designed to be legislative; it may, by resolution, "approve or disapprove" a recommendation for a variance made by the administrator, but it is, in this regard, controlled by the standard of action prescribed for the guidance of that authority. Necessarily, the supervisory function is governed by the self-same criterion; it

has relation to administrative action. This is axiomatic. *Schmidt v. Board of Adjustment of Newark*, cited *supra;* *Lynch v. Hillsdale,* 136 *N. J. L.* 129 *(Sup. Ct.* 1947), affirmed 137 *N. J. L.* 280 *(E. & A.* 1948).

Even the local legislative body itself may not arbitrarily convert the use of a single lot from residence to business. *Linden Methodist Episcopal Church v. City of Linden,* 113 *N. J. L.* 188 *(Sup. Ct.* 1934). And whether a particular residence area should be used as a business center is essentially a legislative question. *Bassett on Zoning,* 84, 125. In the exercise of the local legislative power by ordinance, the governing body may not indulge in arbitrary or illusory action; it must act reasonably and without undue discrimination. *Reid Development Corporation v. Parsippany-Troy Hills Township,* 10 *N. J.* 229 (1952).

The majority finds adequate standards in *R. S.* 40:55–32, cited *supra.* It is said that the governing considerations here include "the lessening of congestion, the securing of safety from fire, panic and other dangers, the providing of adequate light and the prevention of overcrowding, the avoidance of undue concentration of population, and the promotion of health, morals or general welfare"; and that the cited section 39, providing for exceptions and variances, was designed to ameliorate the "rigidity" of the general regulations to permit of "individual variances consistent with the public interest and the purposes of the zone plan and zoning ordinance." But, quite apart from the fact that subsection (d) does not use the term "public interest" and purports to sanction variations not detrimental to the "public good," this very statement exemplifies, I suggest, the legislative nature of the function thus assigned to the local administrator.

By explicit terms, the policy and criteria of conduct set down in section 32 are made to govern the exercise of the local legislative power to create use districts and to regulate use zoning by a "comprehensive plan" designed to achieve the specified ends, not to rule variances from the regulations thus provided. The latter construction would overthrow the

requirement of use zoning by means of "general laws" and a "comprehensive plan" which is of the very essence of the constitutional and statutory zoning process, and invest the local administrator with the legislative function. In this view, the discretionary authority of the administrator would run the whole gamut of the police power as thus outlined, restrained only by its own concept of "detriment" to the "public good" and the "purposes" of the zone plan and the zoning ordinance, and thus the constitutional and statutory principal would be subverted. This must be so unless the zone plan and the zoning ordinance be deemed essentially inviolate; and if this be so, the variance granted here is insupportable.

The criteria set down in section 32 indubitably involve the exercise of the legislative function. Certain and definite standards are indispensable, not only to avoid a delegation of the essential legislative power, but to guard against an arbitrary use of the delegated administrative authority.

The cases cited do not sustain the thesis tendered by my brethren of the majority. The differences are radical.

In *Gorieb v. Fox*, 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228 (1926), the Supreme Court read the standard of "unnecessary hardship" into a local ordinance creating a setback or building line, with relation to the street, fixed at least as far from the street as that occupied by 60% of the existing houses in the block, and reserving to the city council authority to make exceptions and permit buildings closer to the street. Justice Sutherland said that the proviso could not be construed as permitting the council "unfairly to discriminate between lot owners by fixing unequal distances from the street for the erection of buildings of the same character under like circumstances"; nor could it be assumed in advance that the power would be "exercised by the council capriciously, arbitrarily, or with inequality." The council allowed a particular landowner to build 34-2/3 feet from the street line. The established building line was 42 feet from the street. The holding was that the complaining

landowner had not suffered injury by "the alleged unconstitutional feature" of the local law.

In *Carson v. Board of Appeals of Lexington,* 321 *Mass.* 649, 75 *N. E. 2d* 116 *(Sup. Jud. Ct.* 1947), a local by-law provided for "garages for storage and repair" in a business district zoned against that use, where the board of appeals found that " 'the public convenience and welfare' " would be "substantially served, and where such exception" would "not tend to impair the status of the neighborhood." The applicant was a bus company who had "immediate need for garage facilities" to provide adequate public passenger transportation; and there was a finding, not only of public convenience and necessity, but also that "the district involved was not suitable for residential purposes." The holding was that it was not a case for a variance, but for relief under a provision of the statute empowering the board of appeals "to hear and decide requests for special permits upon which such board is required to pass under such ordinance or by-law." This is not unlike our own case of *Schmidt v. Board of Adjustment of Newark,* cited *supra;* and the principle is the same.

And in *Olevson v. Zoning Board of Review,* 71 *R. I.* 303, 44 *A. 2d* 720 *(Sup. Ct.* 1945), the administrative standard was couched in like terms. The town council was authorized, "in appropriate cases and subject to appropriate conditions and safeguards," to "make special exceptions to the terms of any ordinance, * * * in harmony with its general purpose and intent and in accordance with general or specific rules therein contained, or where such exception is reasonably necessary for the convenience or welfare of the public." There, the granted variation or exception was made applicable only to the "prospective vendee" of the applicant's property; the limitation was held to be unreasonable and an excess of power, and the variance set aside.

In the case now before us, the granted variance was rested upon "the proximity of other commercial buildings." This is deemed "insufficient, standing alone"; and the cause is re-

manded to the administrative authority for reconsideration, findings and recommendation to the town council "in the light of the evidence in the record and the principles" declared in the opinion.

The reason given makes clear a purpose to alter the zone boundary, by extending the business district into the residence district; and the variance is therefore without efficacy. But, by the same token, it would be inefficacious if grounded in any of the considerations related to the police power enumerated in section 32, cited *supra*. Quite apart from the question of sufficient administrative standards, there is no dissent elsewhere from the rule that the power to vary the application of zoning regulations does not extend to the alteration of the boundary lines of districts. 58 *Am. Jur.* 1049; 168 *A. L. R.* 51.

And what standard shall govern the reconsideration of the cause? There is no contention of undue hardship. If there were, relief could be had under subsection (c). A variance is not allowable otherwise to serve the purely private interests of the particular lot owner, *e. g.,* his financial enrichment through a more profitable use of the property. What norm, then, shall direct the administrative function? Grounds which would advantage the community at large would bring the administrator into the legislative field comprised in the police power, with all its facets, for there is no compass to guide save the avoidance of that which would work "detriment" to the "public good" and would not "impair" the "intent and purpose" of the zone plan and zoning ordinance, in combination a vague and indeterminate standard which provides no understandable administrative criterion. And this would make for indiscriminate spot zoning in contravention of the basic principle of zoning by use districts under a "comprehensive" plan, a power the local legislative body itself does not possess.

I would not overrule the determination in *Monmouth Lumber Co. v. Ocean Township,* 9 *N. J.* 64 (1952). There, a district boundary line was altered by ordinance. This leg-

islative action was sustained; and the governing body's disapproval of a recommendation for a variance made by the administrative body was affirmed. The meaning and constitutional sufficiency of subdivision (d) were not essential to the decision. These fundamental questions were neither raised nor argued; and what was said must needs be considered in the light of the issue presented for decision. The rule of *stare decisis* proceeds on the hypothesis of a decision made after full and ample consideration of the points necessarily involved in the case. *Brush v. Commissioner of Internal Revenue,* 300 *U. S.* 352, 57 *S. Ct.* 495, 81 *L. Ed.* 691 (1936).

I would reverse the judgment and remand the cause with direction to enter forthwith judgment for plaintiff vacating the variance, both the recommendatory action of the board of adjustment and the resolution of approval adopted by the town council.

Mr. Chief Justice VANDERBILT and Mr. Justice BRENNAN join in this dissent.

HEHER, J., VANDERBILT, C. J., and BRENNAN, J., concur in reversal and would remand with direction to enter judgment for plaintiff.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.