In the Matter of NORTH TITUS RESIDENTIAL ASSOCIATION et al., Petitioners, against BOARD OF ZONING APPEALS OF TOWN OF IRONDEQUOIT et al., Respondents, and LELAND T. PFLANZ, Intervener.

Supreme Court, Special Term, Monroe County, February 8, 1954.

*Donald E. Robinson* and *Edmund Clynes* for petitioners.

*Emmett J. Schnepp* for respondents.

*Mitchell T. Williams* for intervener.

J. C. O'BRIEN, J. On the application of two individuals and an unincorporated membership association, we are called upon to annul the determination of the respondent board of appeals of the Town of Irondequoit, by which the board granted a variance to the intervener. In 1952, Leland T. Pflanz, the inter-

vener, purchased a substantial tract of real property fronting on the north side of Titus Avenue, in the town of Irondequoit. He subdivided the property into residential lots and with the exception of the two lots with which we are here concerned, he built houses thereon. There remained vacant and the subject of our inquiry, these two lots only. One of them fronts on the north side of Titus Avenue a distance of 121 feet and runs back on the west side of Briarwood Drive, 170 feet. The second lot is contiguous to the first and lies just north of it, fronting 61 feet on the west side of Briarwood Drive.

Pflanz proposed to construct a building, referred to as a '' medical center '', containing nine offices for physicians and dentists. In pursuance of this project he applied to the zoning board of appeals for a variance which would permit such construction on the lot first mentioned, which is located within a district zoned '' E '' residential, the highest residential classification of the town. After publication and hearings held in conformity with the statute, the board, on October 8, 1953, made the determination now complained of, varying the ordinance to permit the construction and use requested, subject to various terms and conditions which specified the types and styles of buildings, setbacks, number of offices, the professional use permitted, specifying location of entrances and exits, requiring the use of the second lot for off-street parking, and providing for landscaping and signs.

After the oral argument, supplementary testimony was taken by this court on December 28, 1953, to secure evidence as to whether or not the petitioners were able to establish the hardship which the statute (Town Law, § 267) and the ordinance (Zoning Ordinances of Town of Irondequoit, § 90) require. Titus Avenue, upon which the property fronts, is a main highway and is much travelled. On the south side of Titus Avenue, across the street from the property with which we are concerned, and slightly to the east of it, there is located a large modern shopping center. On the other side of the shopping center there are large greenhouses with retail fruit and vegetable stands. This (south) side of Titus Avenue is in a commercial zone for four or five blocks to the east of the shopping center. The north side of Titus Avenue (zoned '' E '' residential) is improved principally by older type residences and a pre-existing, nonconforming use consisting of a commercial florist's establishment one block west of the lots here involved.

The respondent board of appeals has authority to grant a variance provided the requirements of the statute and ordi-

nance are met (Town Law, § 267, subd. 5; Zoning Ordinance, § 90, subd. 12). At the outset we are confronted with the firmly established rule that Special Term has no power to substitute its judgment for that of the zoning board (*Crone* v. *Town of Brighton*, 119 N. Y. S. 2d 877, 897). Two well-qualified real estate experts who testified for the intervener stated their opinion that the construction of the shopping center had changed the residential nature of the section of Titus Avenue with which we are concerned. They testified that the proposed center would create a '' buffer zone '' between the shopping center and the residences north of Titus Avenue. The zoning board of appeals evidently concurred in that opinion. It is quite possible that the proposed construction and use would constitute a good, perhaps the best possible, use of these lots. Moreover it is doubtful if such use would alter the essential character of the locality. Assuming then that the aim and purpose of the zoning board is laudable, we are confronted with the question as to whether such purpose may lawfully be effected by the granting of a variance or requires a legislative remedy.

The '' unnecessary hardship '' which intervener must establish has been established and defined in *Matter of Otto* v. *Steinhilber* (282 N. Y. 71, 76), and the Court of Appeals held that: '' Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality.''

At the hearing held December 28, 1953, the intervener admitted that from the time he first purchased the tract, he planned to build a medical center on the north side of Titus Avenue on the first lot here involved. He never listed the property for sale nor made any effort to sell it nor to develop it for a permissible use conforming with '' E '' district residence requirements. This is not sufficient to establish that the land cannot yield a reasonable return if used only for a purpose allowed in that zone. (*Matter of Levy* v. *Board of Stds. & Appeals*, 267 N. Y. 347; *Crone* v. *Town of Brighton*, 119 N. Y. S. 2d 877, 888, 889.)

Since the lots were zoned for the same use when he purchased them as they are now, the intervener is in no position to complain. "Presumably this owner, who acquired the parcels with notice of the zoning resolution, paid a consideration appropriate to the limitation of the use. There is no element of the unexpected or incalculable to aggravate his plight." (*People ex rel. Fordham Manor Reformed Church* v. *Walsh,* 244 N. Y. 280, 288; see, also, *Matter of Holy Sepulchre Cemetery* v. *Board of Appeals of the Town of Greece,* 271 App. Div. 33, 41; *Matter of Aberdeen Garage* v. *Murdock,* 257 App. Div. 645.)

The two real estate experts who testified on behalf of intervener stated that in their opinion the parcels could not be economically developed under the uses permitted by the zoning ordinances. These opinions are not sufficient in view of the fact that intervener has not made any effort to sell or develop these lots for a conforming use. "However, it is clear that the only basis for that conclusion [that the property could not yield a reasonable profit] was the witness' [a real estate broker's] opinion that no one would be likely to buy that lot as the site for a fine residence, and it was not claimed that any effort had been made to sell the premises for any of the authorized uses." (*Matter of Clark* v. *Board of Zoning Appeals, Town of Hempstead,* 301 N. Y. 86, 90.)

We have come to the conclusion that there was no proper basis for the granting of the variance by the respondent board. "While stability and regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise." (*Rodgers* v. *Village of Tarrytown,* 302 N. Y. 115, 121. See, also, *Matter of Taxpayers' Assn. of South East Oceanside* v. *Board of Zoning Appeals of Town of Hempstead,* 301 N. Y. 215; *Euclid* v. *Ambler Co.,* 272 U. S. 365.)

The determination of the zoning board of appeals is hereby annulled without costs (Town Law, § 267, subd. 8).