Frahk Del Yeochio, J.
This is a proceeding under article 78 of the Civil Practice Act to review and annul a determination of the Board of Zoning Appeals, made after a hearing, granting a variance to permit John Hinerwadel, the intervenor, to construct and extend existing buildings thereby improving and expanding a present nonconforming, legally existing use.
John Hinerwadel is the owner of 31% acres of land in the town of Clay having a frontage of 863 feet on Fay Boad — a principal traffic artery which intersects U. S. Boute No. 11, a heavily commercialized area zoned as such, a short distance easterly of the property — and a depth of 1600 feet, where he and his father for over 44 years have continuously conducted a private clambake, outing and picnic business. In the conduct of such business, buildings and tents have been erected, a parking lot has been built, and an athletic field and other facilities for recreation have been laid out. Since 1952 he has also used part of the facilities for the manufacture of clam chowder for off-premises consumption.
In March, 1955 the Town Board of the Town of Clay adopted a zoning ordinance which designated the area in which the subject property is located as a residential district.
On April 25, 1957 intervenor’s application for a permit to construct and extend existing buildings so that he might provide larger and more modern facilities to accommodate increased business and also for the preparation of food products for off-premises consumption was rejected by the building inspector and he immediately applied to the Board of Zoning Appeals for the variance in question. At a public hearing held on June 10, 1957 Hinerwadel and his attorney appeared in person and presented their arguments in favor of the application, with a map showing the existing structures and the proposed changes, and 10 nearby residents appeared in person and presented their objections and filed a petition signed by 155 persons opposing the variance upon the grounds that‘ ‘ granting additional facilities would tend to depreciate the value of all residential property within the surrounding area and upon the further grounds that *87 no hardship would be imposed upon Hinerwadel if the Town of Clay officials reject his application for a variance.”
No testimony was taken at the hearing but the board did make certain findings of fact and adopted a resolution granting the application.
Petitioners, by way of preliminary objections, attack the legality of the notice of the public hearing and, on the merits, contend that the decision is not supported by the facts of record and was illegal, arbitrary, capricious, unreasonable and contrary to the provisions, letter and spirit of the zoning ordinance.
The answers of the respondents and intervenor, by way of preliminary objection, attack the right of petitioners to bring this proceeding on the ground they are not ‘ ‘ aggrieved parties ’ ’ and, on the merits, submit a summary of the evidence given, the findings of the Board of Appeals, and an affidavit signed by three members of the board who not only attended the hearing but also had personal knowledge of the facts involved.
Before passing upon the merits of the petition, it is necessary to dispose of the preliminary objections. Briefly, respondents and intervenor argue that petitioners are not “ aggrieved parties ” entitled to maintain this proceeding within the meaning of subdivision 7 of section 267 of the Town Law.
The petition states that “the properties of petitioners are located within a radius of 500 yards from the Hinerwadel property.” While there is no allegation that any of petitioners’ property adjoins the Hinerwadel area, there can be no dispute that petitioners are owners of “ nearby ” premises.*
It is respondents’ and intervenor’s claim that, despite the foregoing, petitioners may not maintain this proceeding without allegations of special damage to them resulting from the granting of the variance in question.
This contention is not supported by sound reasoning nor by authority in this jurisdiction. In Edwards A. Lashins, Inc. v. Griffin (132 N. Y. S. 2d 896, 898) the court said: “ On the face of it, without proof of special injury or damage, an owner of property has sufficient interest to enable him to appeal a determination permitting an unauthorized zoning use of adjoining premises.” That statement was later quoted with approval in Bayport Civic Assn. v. Koehler (138 N. Y. S. 2d 524) where it was held that the owners of nearby premises have the same right of review as owners of adjacent premises. There the court said (p. 530):
*88 “ The comment of Desmond, J., in Clark v. Board of Zoning Appeals, 301 N. Y. 86, at page 89, 92 N. E. 2d 903, of the opinion, should also be noted: ‘ Petitioners-appellants are a few of the more than two hundred nearby residents who objected, before the board, to the application for this variance. ’ (Emphasis supplied.)
‘ ‘ I am fully aware of the argument (which may well be made) that the words quoted do not constitute a decision — that the particular question was not either raised in, or passed upon, by the Court of Appeals. Nevertheless, this is surely some recognition of the proposition that (at least unless the question is properly raised and presented for adjudication in a particular case) ‘ nearby residents ’ as well as ‘ adjoining owners ’ have the status of ‘ persons aggrieved ’, Town Law, § 267, subd. 7, and similar statutes.
‘1 While this may be an enlargement of the rule as stated by Justice Eager [in Edward A. Lashins,Inc. v. Griffin, 132 N. Y. S. 2d 896], speaking as he does of ‘ adjoining owners ’, I believe that the spirit, intent and purpose of zoning supports the rulings made in this decision.” (See, also, Smith on Zoning Law and Practice, § 131, p. 208: ‘1 The right of nearby property owners to protect their interests in matters before the Board of Appeals and to have such proceedings reviewed appears in many cases ”, and authorities there cited; Matter of Horan v. Board of Appeals of the Vil. of Scarsdale, 6 Misc 2d 571.)
The cases relied on by respondents are distinguishable on the facts; it is the determination of this court that petitioners in the present proeedings are “ aggrieved parties ” within the meaning of subdivision 7 of section 267 of the Town Law.
The preliminary question raised by petitioners is whether the notice of the public hearing which preceded the granting of the variance was legally sufficient under the applicable statute. Subdivision 5 of section 267 of the Town Law provides that, prior to a hearing before the Board of Zoning Appeals, the board “ shall give public notice thereof by the publication in the official paper of a notice of such hearing, at least five days prior to the date thereof ”.
As indicated above, it appears that the hearing which preceded the granting of the variance was held on the evening of June 10, 1957. The application for the variance was filed with the Board of Zoning Appeals on April 25,1957 and a notice of the hearing for publication during the week of June third was mailed to the publishers of the North Syracuse Star (a weekly newspaper circulated in the town of Clay) by the clerk of the board on May *89 28, 1957. The notice was thereafter published in the regular weekly issue of the “ Star ” bearing date June 6, 1957. It is this circumstance which gives rise to the present claim of legal insufficiency. If, as petitioners imply, the paper carrying the required notice was in fact not made available until June 6,1957 then the notice (given only four days before the hearing) would not comply with the requirements of subdivision 5 of section 267 of the Town Law.
Such a defect, however, would not be jurisdictional and would not necessarily void the proceedings which followed the public hearing. Bearing in mind that the purpose of the statute is to advise those who may have an interest in, and a desire to be heard upon, the proposed administrative action, it would seem that, as to those who had actual notice of the hearing and failed to question the sufficiency thereof prior to the hearing, a technical deviation from the statutory requirement is not available to vacate the determination of the board. The requirement that notice be given in strict accordance with the method prescribed by the statute may be waived by personal appearance of the objectors at the hearing. (North Shore Beach Property Owners Assn. v. Town of Brookhaven, 115 N. Y. S. 2d 670; Hirsch v. Zoning Board of Review of City of Pawtucket, 56 R. I. 463; Hopkins v. MacCulloch, 35 Cal. App. 2d 442.) In this connection, it is to be observed that nowhere in the petition is there any claim that petitioners were not aware of the scheduled hearing; on the contrary, it is affirmatively alleged that the petitioners appeared at the hearing on June 10 and, prior thereto, joined in a written statement signed by 155 nearby property owners which was presented at that time in opposition to the proposed variance. Petitioners’ objections and arguments were heard and considered by the zoning board and that is all they could have accomplished whether notice was given to them four or five days prior to the hearing. In these circumstances, it would appear that petitioners may not now question the sufficiency of the notice.
There is another ground, however, upon which the court prefers to base its determination that the notice required by subdivision 5 of section 267 of the Town Law was properly given. Accompanying the return is an affidavit by Don H. Brown, president of The Onon-Town Publishing Co., Inc., publishers of the North Syracuse Star, stating as follows:
t 6 * * #
“ 3. That the said North Syracuse Star is regularly set up and printed on each and every Wednesday morning.
*90 “ 4. That the said North Syracuse Star is regularly delivered to newsstands for sale to the public on each and every Wednesday afternoon.
“ 5. That the said North Syracuse Star regularly bears a date line of Thursday.
“ 6. That the said North Syracuse Star is regularly received by the public from the publisher, The Onon-Town Publishing Co., Inc. on each and every Wednesday afternoon.
“ 7. That the weekly edition of the said North Syracuse Star bearing date line ‘ Thursday, June 6, 1957 ’ was printed on Wednesday, June 5, 1957, and was delivered to newsstands for sale to the public and was received by the public from the publisher, The Onon-Town Publishing Co., Inc. on Wednesday, June 5, 1957.”
In the view of this court, it is the day on which the paper containing the required legal notice is made available to the public — and not the date appearing on the paper — which marks the time of giving notice. Inasmuch as the “ Star ” was offered for distribution on June 5, 1957, this court finds that there was compliance with the five-day requirement of subdivision 5 of section 267 of the Town Law.
Turning to the merits of the proceeding, the sole question for this court is whether, upon the entire record, the findings of the zoning board are supported by evidence so substantial that from it an inference of the existence of the facts found may reasonably be drawn. (Matter of Stork Restaurant v. Boland, 282 N. Y. 256.) If not, the decision was arbitrary, capricious, unreasonable and illegal.
In determining whether there was any evidence before the board to support its decision, the court must start with the premise that the decision is presumptively correct (Matter of Falvo v. Kerner, 222 App. Div. 289 [4th dept.]; People ex rel. Werner v. Walsh, 212 App. Div. 635, affd. 240 N. Y. 689) and if the board had an opportunity to make an informed decision it will not be disturbed because the court may not weigh the evidence or reject the choice made by the board when the evidence is conflicting and room for choice exists. (Matter of Taub v. Pirnie, 3 N Y 2d 188; Matter of Stork Restaurant v. Boland, supra.)
In order to succeed in this proceeding, petitioners must meet the burden of establishing that respondents acted arbitrarily, capriciously and unreasonably for, absent such proof, the court has no power to substitute its judgment for that of the duly constituted administrative authorities. (People ex rel. St. *91 Albans-Spring field Corp. v. Connell, 257 N. Y. 73, 81; Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121; Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508, 520.)
In deciding whether petitioners have met the burden imposed upon them, the court has considered the answers of respondents and of intervenor, the first of which contains a summary of the proceedings had on June 10, 1957 and a copy of the map submitted to the board showing the present buildings on intervenor’s property and the proposed additions thereto. These are a necessary part of the record upon which the action of the board is to be reviewed. (People ex rel. Hudson-Harlem Co. v. Walker, 282 N. Y. 400, 404.) Attached to intervenor’s answer is an affidavit by the three members of the board voting in favor of the variance, stating their familiarity with the locality, condition and use of the subject premises and setting forth facts within the personal knowledge of the deponents which were considered by them in arriving at their determination. This affidavit was also examined in determining the sufficiency of the evidence to sustain respondents’ action. (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280, 287; Matter of Taub v. Pirnie, supra.)
In support of their present position, petitioners rely upon the leading case of Matter of Otto v. Steinhilber (282 N. Y. 71) which they say lays down the requirements which must be met before respondents may permit a variance. It is their claim that the proof before the court fails to satisfy these requirements. Specifically, they point to the following language to be found at page 76 of that opinion: “ Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality. ’ ’
In applying the test thus laid down it is important to note the significant distinction which exists between the Otto case, as well as others following that decision cited by petitioners (viz., Matter of Taxpayers’ Assn. v. Board of Appeals, 301 N. Y. 215; Y. W. H. Assn. v. Board of Standards and Appeals, 266 N. Y. 270; Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 86; Matter of Hickox v. Griffin, 298 N. Y. 365; Matter of Freitag v. *92 Marsh, 280 App. Div. 934; Matter of North Titus Residential Assn. v. Board of Appeals, 205 Misc. 518; Matter of Stillman v. Board of Standards & Appeals, 222 App. Div. 19, affd. 247 N. Y. 599; Matter of Stevens v. Clarke, 216 App. Div. 351) and the case now before this court. In each of the above actions the variance sought was to permit the commencement of a new and nonconforming use upon property which was either vacant land or was then being devoted to a use permitted within that zoning district. The question was whether, in those circumstances, the introduction of a nonconforming use was necessary to assure the property owner a fair return on his investment.
In the case at bar, however, the board made a finding, which is amply supported by the record, that “ No new or different use of the premises is contemplated other than the expansion of the presently non-conforming though legally existing use.” Thus, the board was concerned not with the institution or introduction of a new and unauthorized activity upon property used up to that time for a purpose prescribed by the zoning ordinance but with the improvement and extension of an established, legal, nonconforming use. In determining whether the denial of the variance sought would work unnecessary hardship upon the applicant, the board, of necessity, took into account the existing exceptional circumstances, including the presence upon the subject land of a well-developed, nonconforming business activity. The right of the intervenor to operate that business — now and in the future — is a substantial interest which must he recognized. (People v. Miller, 304 N. Y. 105, 107.)
Having in mind all the matters properly before the board, as set forth in the summary of proceedings and the affidavit referred to above, this court is of the opinion that the granting of the variance upon the ground that “ the strict application of the ‘ Zoning Ordinance of the Town of Clay, 1955 ’ will result in practical difficulty and unnecessary hardship that would deprive the owner of the reasonable use of his premises ”, was within the meaning and intent of the Otto case.
It appears that intervenor owns the largest single tract in the area consisting of approximately 31% acres upon which he and his family have conducted a clambake, picnic and outing business for almost half a century. Permanent buildings presently used in operation of the business are located generally in the northeast quadrant of the property. When a clambake is being conducted intervenor also makes use of a number of tents of various sizes which are scattered around the buildings at some distance from them and there is no question that the inter *93 vening areas are occupied by those attending the function and are likewise devoted to clambake activities. The structures to be erected under the variance will be located on the area between existing buildings and tents and will replace the tents, which will then be done away with. As stated in the affidavit of respondents Carter, Zube and Pratt, “ These additional facilities in effect only constitute a replacement of temporary facilities which the applicant has been using for over twenty-five (25) years in the operation of his business.”
The map before the board shows that the northern end of intervenor’s property supports growths of trees or shrubs along three sides which stand between the clambake area and adjoining properties. The clambake area is further isolated by what has been referred to as a “buffer zone”, which is composed of undeveloped land lying between the buildings and tents and the lot lines of intervenor’s property. It is impossible to determine from the map the exact extent of the ‘ ‘ buffer zone ’ ’ which surrounds the clambake facilities; it is clear however that, inasmuch as the proposed additions are closer to the existing buildings than are the tents now in use, the “buffer area” would be increased under the variance which has been granted.
The locations which would be occupied by the structures for which the variance was sought are an integral part of an entire area which for many years has been devoted to the clambake business. They are so situated as to make it arbitrary and unreasonable to forbid their use in the business which surrounds them and to restrict them to residential purposes as permitted in the zoning district in which the Hinerwadel property is located. Intervenor may not be required to discontinue his established business, and that portion of the property for which the variance has been granted is neither suitable nor desirable for residential use in light of the nonconforming legally existing use which is being carried on within the same premises. Thus, the first test of Matter of Otto v. Steinhilber (282 N. Y. 71, supra) has been met, — “ the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone ”.
As to the second requirement, it is clear that, in the language of the Otto decision, “ the plight of the owner [intervenor herein] is due to unique circumstances and not to the general conditions in the neighborhood ”. It appears that the business was commenced some 40 years ago and the petitioners no doubt erected or purchased their homes with full knowledge that intervenor was conducting a clambake, picnic and outing business on the largest single tract of land in the area. In People v. Miller *94 (304 N. Y. 105,107, supra) the court said: “ It is the law of this state that nonconforming uses or structures, in existence when a zoning ordinance is enacted, are, as a general rule, constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance. ’ ’ Since the unique activity was commenced prior to the adoption of a zoning ordinance it was a valid and proper undertaking, has been continued to this date as a protected interest of the intervenor, and is a use of which he may not now be deprived.
With regard to the third requirement of the Otto case, the evidence of record demonstrates without any doubt that ‘ ‘ the use to be authorized by the variance will not alter the essential character of the locality.” As has been’pointed out, the variance serves only to permit the erection of permanent structures to serve the same purposes as, and to replace, “ temporary structures ” which a majority of the zoning board states have been in use for 25 years. Moreover, no new activity is to be commenced upon the subject premises, both the business of conducting clambakes and the processing of clam chowder for off-premises consumption having been carried on for a number of years prior to the granting of the variance.
At page 75 of the opinion in Matter of Otto v. Steinhilber (supra) the Court of Appeals said: “ The object of a variance granted by the Board of Appeals in favor of property owners suffering unnecessary hardship in the operation of a zoning law, is to afford relief to an individual property owner laboring under restrictions to which no valid general objection may be made.” The variance granted in the case at bar clearly falls within the standard there laid down.
While no two zoning cases are alike, circumstances similar to those now before the court are to be found in People ex rel. Facey v. Leo (110 Misc. 516, affd. 193 App. Div. 910, affd. 230 N. Y. 602). In that case the owner of premises upon which a frame stable accommodating 8 to 12 horses had been located for more than 25 years sought permission to demolish the stable, occupying only the rear portion of the lot, and to erect a brick garage covering the entire plot. The premises were in a district zoned for residential purposes which did not include public garages as a permitted use. The action by the Board of Appeals in directing issuance of the permit was affirmed by the courts upon the ground that the board had authority to grant variances in the face of practical difficulties or unnecessary hardships.
There is also authority that, even without a variance, a landowner has the right to accommodate an increase in business and *95 even to erect buildings necessary thereto if the business in essence is the same as a nonconforming use existing prior to adoption of the zoning regulation. (People v. Perkins, 282 N Y. 329; Village of Mill Neck v. Nolan, 233 App. Div. 248.)
As an additional ground for setting aside the variance granted to intervenor, petitioners assert that the board was without power under the Zoning Ordinance of the Town of Clay, as amended, to grant the relief requested in the absence of proof that the land in question was an ‘1 exceptionally irregular, narrow, shallow or steep lot ”. This argument is based upon article VII, section 23 (3) of the ordinance, which vests the zoning board with authority ‘1 After public hearing upon appeal in writing from a decision in writing by an administrative official, to vary or adapt the strict application of any of the requirements of this ordinance in the case of exceptionally irregular, narrow, shallow or steep lots, or other exceptional physical conditions, whereby such strict application would result in practical difficulty or unnecessary hardship that would deprive the owner of the reasonable use of the land or building involved, but in no other case.” (Emphasis supplied.) Petitioners argue that proof of one or more of the specific lot conditions stated above is indispensable to the granting of a variance. They further claim that the words “ or other exceptional physical conditions” do not in fact leave room for consideration of other conditions but must be limited by the specific conditions immediately preceding them to the circumstances there specified. Respondents and intervenor, on the other hand, dispute their interpretation of the words in question and claim that the conjunction “or” is disjunctive and introduces words which acknowledge the existence of additional situations in which a variance may be granted. Cases have been cited by both sides which, though not precisely in point, might be said to support the constructions which each party has adopted. (Cf. BogartZ v. Astor, 182 Misc. 214, affd. 268 App. Div. 795, revd. on other grounds 293 N. Y. 563; Smith v. Farley, 155 App. Div. 813; McSweeney v. Bazinet, 269 App. Div. 213; cf., also, Burks v. Bosso, 180 N. Y. 341; Matter of Robinson, 203 N. Y. 380.) It is the opinion of this court, however, that the words “ exceptionally irregular, narrow, shallow or steep lots ” are not exhaustive and that the phrase “ or other exceptional physical conditions, whereby such strict application would result in practical difficulty or unnecessary hardship that would deprive the owner of the reasonable use of the land or building involved ” contemplates additional situations, within which the one at bar may properly be placed, wherein the board is authorized to grant variances.
*96 Finally, petitioners claim that the variance granted was improper upon the ground that, although the zoning ordinance permits the board to grant a variance only on a finding that it is “ the minimum variance ” necessary for the reasonable use of the applicant’s land or building, the board, having made the required finding*, also found that “ the proposed expansion of buildings, if approved, will not be immediately undertaken at a single time but would be undertaken as business conditions warrant it Petitioners assert that there is a fatal inconsistency in these findings which however is not so perceived by the court. Their argument seems to assume that, unless the intervenor intends immediately to act upon the variance, it cannot be the minimum necessary to permit the reasonable use of his property.
The board found that the proposed expansion was a reasonable use of intervenor’s premises, but it did not require that he must commence immediately upon that use. The present economic conditions may not be such as urge intervenor to proceed immediately to all of the improvement and expansion which has been found to be incidental to a reasonable use of his property. This does not necessarily mean that the variance granted was more than the minimum required for that use; rather it means that the intervenor will forego until some time in the future complete implementation of the reasonable use to which the board has said his property may be put. Such a decision on the part of the intervenor is no basis for invalidating the determination of the zoning board.
Petitioners have failed to establish that the granting of the variance was arbitrary, capricious, unreasonable or illegal. Accordingly, the petition must be dismissed.
Prepare order.

 A map attached to the petition reveals that a number of the petitioners are owners of property which does in fact adjoin the subject premises.