Bernard S. Meyer, J.
These consolidated article 78 (Civ. Prac. Act) proceedings raise a number of questions, both substantive and procedural. Involved is property on the south side of Peninsula Boulevard approximately 142 feet east of Mill Road, in that portion of the Town of Hempstead known as Hewlett. To the west of and within 300 feet of the property, on all four corners of Peninsula Boulevard and Mill Road are gasoline stations; to the east is a drive-in dry-cleaning establishment; to the *1011 north, on the opposite side of Peninsula Boulevard is a large shopping center including a supermarket, a theatre and some 10 or 12 other stores; to the south the property is adjoined by homes facing on Waver ly Street. Petitioners in the first proceeding are three owners of Waverly Street homes whose residences adjoin the rear line of the subject parcel. They seek to annul the decision of the Board of Zoning Appeals insofar as it affirms the issuance of a building permit for a bowling alley containing 31 alleys. Petitioner in the second proceeding is the permittee, who seeks to annul the board’s decision insofar as it reversed the building inspector’s approval of a parking plan for 128 cars, held that parking of only 125 cars was feasible, and modified the permit granted by the building inspector by reducing the number of alleys permitted from 32 to 31. In the district in which the property is located, a bowling alley is a permitted use. The parking requirement for bowling alleys under the Town Zoning Ordinance is four spaces for each alley. The parking ordinance does not define “ parking space ” or otherwise indicate length, width or angle of, or aisleway space between such spaces. The permittee argues that, absent standards in the ordinance, neither the inspector nor the board may refuse to approve its parking plan and that it is, therefore, entitled as a matter of right to a permit for 32 alleys. The homeowners argue that a bowling alley-is a place of public amusement and cannot be located within 300 feet of a gasoline station, that the permit improperly allowed a 10-foot setback, and that the permit should not have allowed 31 alleys since the parking plan is not feasible for more than 78 cars. Both proceedings are dismissed on the merits, without costs.
In February, 1960, permittee applied for and received a permit for erection of a foundation. The so-called foundation is actually footings on which rest some 56 columns. Forty-eight of the columns are exposed and ears are parked between them, the bowling alleys being in an enclosed building resting on the columns. In other words, except for enclosed entrance stairs at the front center and back center of the building there is no ground floor to the building, the ground area being used for parking, and the bowling alley portion of the installation being elevated. As part of the February, 1960 application, a parking plan was filed and approved. Homeowners sought by an article 78 proceeding to have the allowance of that permit annulled, but the proceeding was dismissed because homeowners had failed to appeal to respondent board. Since the February, 1960 permit only authorized construction of the foundation, permittee was required to make a second application for a permit for the elevated portion of the structure, and as part qf *1012 that application a parking plan was required. From the granting of the superstructure permit, homeowners appealed to the board, with the result indicated above. Permittee argues that insofar as homeowners’ present appeal covers matters decided in connection with the February, 1960 permit it is not timely, that homeowners have not shown that they are ‘ ‘ persons aggrieved ’ ’ within the meaning of section 267 of the Town Law,'and further, that they are not the real parties in interest. Permittee also raises in its answer a further question concerning timeliness of homeowners’ petition which is the same question disposed of in a prior memorandum on respondent board’s objections in point of law and will not be further dealt with. The board urges that affidavits annexed to homeowners’ petition may not be considered by the court. Homeowners urge that the matter involves a review of the sufficiency of the evidence and, therefore, must be transferred to the Appellate Division, and, further, that the board’s decision must in any event be reversed because after conclusion of hearings before the board, its members drove their cars to the property, inspected it and spent approximately four hours maneuvering in and out of various parking spaces and measuring them for accuracy of dimension, all without notice to homeowners, although a representative of permittee was present.
The procedural questions will be disposed of first. The short answer to the contention that the objection to the parking plan is not timely because the same point was involved in the February, 1960 application is that the two applications are separate proceedings. Since the February, 1960 application did not include the superstructure or show the number of alleys to be included in it, it does not appear that the parking plan was a necessary part of that application. But if it be assumed that the ordinance required submission and approval of a parking plan with both applications, the result is nó different. Under subdivisions 2 and 3 of section 267 of the Town Law, homeowners have an absolute right of appeal from the granting of the permit on the second application, and their appeal to the board was taken within the permitted time after the granting of that permit. The board heard no appeal on the first application, so no question of rehearing or reconsideration is presented. Having split its project into two applications, permittee has made it possible for homeowners, who might otherwise have been barred, to appeal, and may not complain because the board in pursuance of statutory mandate considered the appeal.
The argument that homeowners are not the real parties in interest, and have not shown themselves aggrieved stems from *1013 the facts that before the board homeowners showed only that their property directly abutted the rear of subject parcel but did not show that their personal or property rights will be directly and specifically affected, and that permittee showed that one of its competitors had participated in conferences with homeowners’ attorneys and traffic expert. While a competitor is not an aggrieved party (1 Rathkopf, Law of Zoning and Planning, ch. 38, pp. 633, 636), evidence that a competitor is co-operating, financially or otherwise, with persons who are aggrieved does not show that the latter are not real parties in interest. It is not necessary to rely on cases such as Matter of Gerling v. Board of Zoning Appeals (11 Misc 2d 84, revd. on other grounds 6 A D 2d 247) which held any adjoining owner an aggrieved person. Here the record shows that homeowners own residences on the next street south of Peninsula Boulevard and that parking is not permitted on Peninsula Boulevard. It is, therefore, probable that any overflow parkers will find their way to homeowners’ street. The statute permitting aggrieved persons to appeal is to be liberally construed (Blumberg v. Hill, 119 N. Y. S. 2d 855; Matter of Horan v. Board of Appeals, 6 Misc 2d 571). Homeowners, of course, could not produce evidence of such parking interference until the alleys began to operate, but it could reasonably be inferred from the evidence. The board did not err, therefore, in allowing the appeal by homeowners.
The objection to the new matter in the two affidavits annexed to the petition is predicated on the fact that the court is acting in review (Matter of Fragomeni v. Wilson, 280 App. Div. 1023), but overlooks the fact that what is involved in the instant case is review of a Zoning Board decision under subdivision 7 of section 267 of the Town Law, which subdivision specifically authorizes the court to take additional evidence. In a zoning review case it is proper to present to the court, by affidavit, facts which, petitioner argues, warrant the taking of further proof (Matter of Joynt v. King, 6 A D 2d 234, 239). The affidavits in the present case, therefore, will not be stricken, but since the Bettman affidavit adds only data which, in light of the fact that a bowling alley is a permitted use, is irrelevant, and' the Rosenberg affidavit shows not that the board erred in approving the parking plan, but that permittee is violating the plan as approved (which is for the enforcement authorities), no further hearing will be held nor further proof taken.
Homeowners’ argument that the matter must be transferred to the Appellate Division is based on the use in chapter 771 of the Laws of 1952 of a period rather than a comma after the *1014 words ‘ ‘ town clerk ’ ’ in the sentence which became the second sentence of present subdivision 7 of section 267 of the Town Law. That that punctuation was a typographical error and not intended to separate exceptions (b) and (c) from exception (a) is evident from a comparison with chapter 329 of the Laws of 1956, by which section 179-b of the Village Law was conformed with subdivision 7 of section 267 of the Town Law. In the Village Law section a comma rather than a period is used.
Homeowners’ contention that the board committed error in visiting the property overlooks the facts that in so doing the board was acting in accordance with the suggestion made by homeowners’ counsel in their letter of August 24, 1960, and that ‘ ‘ a Zoning Board of Appeals may act upon its own knowledge of conditions or make its own survey ’ ’ provided it sets forth the facts so found in its decision (Matter of Russo v. Stevens, 7 A D 2d 575 [an appeal from a Board of Zoning Appeals decision affirming the granting of a permit]). While it would have been better practice for the board, especially in a proceeding as hard-fought as the instant one, to make its survey in the presence of both parties, none of the data set forth in its decision is shown to have been, or indeed could have been, influenced by the presence of permittee’s representative. The irregularity thus shown, if irregularity it be, is not sufficient to warrant disturbing the board’s decision (Matter of Russo v. Stevens, supra).
We come then to the merits of the two proceedings. Homeowners’ contention that the existence of gasoline stations within 300 feet mandated denial of the permit must be overruled, for the ordinance (§ Gr-10.0) only prohibits erection of a gasoline station within 300 feet of a place of amusement. Whatever may be said of the wisdom, or lack of wisdom, of permitting a place of amusement to be erected within 300 feet of an existing service station must be addressed to the Town Board which has the authority to amend the ordinance, not to the board or to this court. With respect to setback, section X-5.4 provides that notwithstanding other setback provisions gas stations must have a 20-foot front yard, section X-5.3 provides that buildings not controlled by X-5.4 or X-5.1 shall be set back 10 feet, and section X-5.1 provides “Except as otherwise provided in Sec. X-5.4, the required front yard depth shall be the same as the average front yard depth of the existing buildings within two hundred (200) feet on each side of the lot and within the same block”. The building inspector allowed a 10-foot setback and the board *1015 affirmed, finding that the gas station on one side was sui generis and the dry cleaner on the other side was the only other existing building within the designated area, and that, therefore, section X-5.3 applied. The board’s construction is affirmed because (1) in view of the special provision for gasoline stations in section X-5.4 and the specific exception with respect to them in section X-5.1, the interpretation of the latter section to exclude gasoline stations in striking an average has a reasonable basis in law and is neither arbitrary nor capricious (Matter of Park East Land Corp. v. Finkelstein, 299 N. Y. 70, 75); and (2) the application contended for by homeowners would raise grave constitutional questions (Eubank v. Richmond, 226 U. S. 137; Gorieb v. Fox, 274 U. S. 603; Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189; see People v. Teuscher, 248 N. Y. 454, 464; Matter of Van Auken v. Kimmey, 141 Misc. 105, 113).
Nor may the court uphold homeowners’ argument that the board’s finding that the parking* plan is feasible for 125 cars is against the weight of the evidence. The factual findings of the board are supported by the testimony of Messrs. Wood and Landman and by the survey made by the board members at the subject property. While Mr. Landman testified that if the same plan were put before him again he 6 5 would not pass it without another curb cut ’ ’, it is clear that this was predicated on the difficulty of access to the second driveway because parking* space 101 blocked passage from one parking aisle to the next. Since space 101 was disallowed by the board, the access which Mr. Landman felt necessary was provided. While the board’s findings after its survey include the statement that “ in many instances we found the driver of the interior car in a (3) car space was unable to leave the car unless the adjacent car was shifted,” it also noted that “ In each of these instances, the cars used by the Board members were average or larger than average in size and were not compact economy ears.” As already noted, the ordinance does not require parking spaces of particular dimension nor for vehicles of particular make or size. The basic difference between the traffic engineers produced by homeowners and the town officials is that homeonwers ’ engineers were using regular sized cars as their standard while the town officials and the board were concerned with whether the available space would accommodate the number of cars of regular and compact size that could reasonably be expected to be brought to the property by bowling patrons. In the absence of ordinance specification, the board committed no error of law in reaching its conclusions. Factually there is *1016 substantial evidence to support the board’s conclusion. The court may not substitute its judgment for that of the board. The board’s determination must, therefore, be affirmed.
On like reasoning the board’s disallowance of three spaces shown on the filed plan must be approved, because supported by the findings made as a result of the board’s survey, unless permittee is correct in its position that the failure to define ‘ ‘ parking space ’ ’ in the ordinance results in an unconstitutional delegation to the board. That that position is not correct, however, was determined in Matter of Mirschel v. Weissenberger (277 App. Div. 1039) which upheld against a contention that it failed to fix standards and, therefore, improperly delegated legislative authority, an ordinance which authorized a Board of Appeals to “make such requirements as to parking facilities to be provided in connection with such use, as will in its judgment prevent undue traffic congestion and street curb parking that might otherwise be occasioned by such use.” Of that ordinance, the Appellate Division said: “The intent of the
section as a whole is clear, and it provides that the particular use is permissible in the district upon furnishing of suitable automobile parking facilities, the extent of which is to be determined by the board of appeals, upon application, and upon due consideration of the public interest in respect of traffic congestion.” The town ordinance fixes a ratio of four spaces per bowling alley and is, therefore, less vulnerable to the present criticism than was the Málveme ordinance under attack in Matter of Mirschel (supra), which defined neither ratio nor type or dimension of space. Following the principle of Matter of Mirschel (supra), the court must affirm the board’s dis-allowance of three spaces and consequent reduction of the number of alleys permitted. The ordinance lays down ‘ ‘ an intelligible principle ” (Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164, 169 ; see Matter of Marburg v. Cole, 286 N. Y. 202, 211-212; and Matter of Aloe v. Dassler, 278 App. Div. 975, affd. 303 N. Y. 878). More is not required.
Settle one order on notice reciting the granting on consent of the motion for consolidation from the Bench, and dismissing both proceedings, without costs.