In the Matter of YOUNG WOMEN'S HEBREW ASSOCIATION et al., Appellants, against THE BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK et al., Respondents.

(Argued January 7, 1935; decided February 26, 1935.)

*Harold H. Levin* for appellants. The record being barren of evidence from which practical difficulties or unnecessary hardship may be fairly inferred, the Board of Standards and Appeals was without power to grant the variation herein. (*Matter of Reed* v. *Board of Standards & Appeals*, 255 N. Y. 126; *People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280; *Matter of Chizner* v. *Walsh*, 236 App. Div. 731; 261 N. Y. 707; *Matter of Proc Building Corp.* v. *Connell*, 240 App. Div. 782; 264 N. Y. 513.) The fact, if true, that the intervener's property was being operated at a loss does not constitute a sufficient hardship under section 21 of the Building Zone Resolution. (*Matter of Stillman* v. *Board*, 222 App. Div. 19; 247 N. Y. 599; *Matter of Dempsey* v. *Murdock*, 241 App. Div. 64; *People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; 240 N. Y. 689; *Matter of 4672 Broadway Corp.* v. *Board of Standards & Appeals*, 225 App. Div. 97.) The presence of the two gasoline stations on the opposite side of the plaza is not " hardship " within the meaning of section 21. (*People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; 240 N. Y. 689; *Matter of Chizner* v. *Walsh*, 236 App. Div. 731; 261 N. Y. 707; *Matter of Reed* v. *Board of Standards & Appeals*, 255 N. Y. 126.)

*Paul Windels, Corporation Counsel* (*Paxton Blair* and *Seymour B. Quel* of counsel), for the Board of Standards and Appeals of the city of New York et al., respondents. The evidence in the record is adequate to support the conclusion of the Board to the effect that practical difficulties or unnecessary hardships would result if the

strict letter of the Building Zone Resolution were enforced against the applicant. (*People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280; *Matter of Reed* v. *Board of Standards & Appeals*, 230 App. Div. 21; 255 N. Y. 126; *Matter of Riverside St. Clair Corp.* v. *Walsh*, 131 Misc. Rep. 652; 225 App. Div. 655.) The Board did not abuse its discretion in granting the application for a variation and its decision should, therefore, be permitted to stand. (*People ex rel. St. Albans-Springfield Corp.* v. *Connell*, 257 N. Y. 73; *People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; 240 N. Y. 689; *Matter of Reed* v. *Board of Standards & Appeals*, 230 App. Div. 21; 255 N. Y. 126.)

*Gustavus A. Rogers* for Gelkom Realty Corporation, intervener, respondent. The Board of Standards and Appeals having granted the application, the only question open is, did the Board have the power. (*Matter of Reed* v. *Board of Standards & Appeals*, 255 N. Y. 126; *People ex rel. St. Albans-Springfield Corp.* v. *Connell*, 257 N. Y. 73.) Unprofitable use of the property and neighborhood conditions are proper elements in considering unnecessary hardship. (*People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280; *Matter of Rutland Parkway, Inc.*, v. *Murdock*, 241 App. Div. 762.) The intervener-respondent made out a case of unnecessary hardship. (*People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; 240 N. Y. 689; *Matter of 4672 Broadway Corp.* v. *Board of Standards & Appeals*, 225 App. Div. 97; *Matter of Dunne* v. *Walsh*, 235 App. Div. 72; *Matter of Nagaven Realties, Inc.* v. *Benzhaf*, 149 Misc. Rep. 361; *Wilkins* v. *Walsh*, 225 App. Div. 774; 251 N. Y. 518.)

LOUGHRAN, J. The intervener respondent is the owner of premises at the northwest corner of Fifth avenue and One Hundred and Tenth street, Manhattan, city of New York. The property is wholly within a district zoned for business. " In a business district no building or premises shall be used, and no building shall be erected

which is arranged, intended or designed to be used, for any of the following specified trades, industries or uses: * * * (46) Gasoline service station." (Amended Building Zone Resolution, § 4; see New York Code of Ordinances, Appendix B.)

The Board of Standards and Appeals is empowered in a specific case to vary any provision of the zoning resolution, when the variation is in harmony with the general purpose and intent to secure the public health, safety and general welfare, and does substantial justice, and the case is one " where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution." (Amended Building Zone Resolution, § 21.) Pursuant to the power so conferred in a case of unnecessary hardship, the Board, on November 8, 1933, granted to the intervener respondent permission to convert its property into a gasoline service station. This action was reviewed by certiorari (Charter of the City of New York, § 719-a; Laws 1901, chap. 466, added by L. 1916, chap. 503, § 6, as amd.) upon the petition of the appellants, owners of properties in the neighborhood. The decision of the Board was confirmed at Special Term. The order of confirmation has been affirmed by the Appellate Division. We allowed this appeal so that we might review the question whether the finding of unnecessary hardship has any support in the record.

Conformably to the requirement that " the hardship and its occasion must be exhibited fully and at large " (*People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280, 290; Charter of the City of New York, § 719-a), the return of the Board includes its proceedings, and sets forth the following facts to show the grounds of its decision:

" 1. That the particular locality, 110th Street and 5th Avenue, has, at the present day, a gasoline service station on the northeast corner, a gasoline service station on the southeast corner, the applicant's corner on the northwest corner [being] at present occupied by a moving picture theatre, and on the southwest corner Central Park.

274

" 2. That the inspection further disclosed the fact that no gasoline service station existed on the west side of 5th Avenue from Harlem down to Lafayette Street. That as a result of that condition south-bound traffic in order to obtain gasoline along such thoroughfare necessarily caused traffic congestion by vehicles being compelled to make a complete round-about turn in order to cross over to the east side of the thoroughfare where gasoline stations were located. The Board of Standards and Appeals found that a gasoline service station located on the premises of the applicant would, under such conditions, fill a public need by obviating the dangers of such traffic congestion caused by the crossing of vehicles from the west side to the east side.

" 3. That the hearing further disclosed the fact that the applicant was suffering real hardship within the meaning and purview of Section 21 of the zoning restrictions. That the use for conforming purposes of that particular locality would not only cause failure to bring a proper return on the investment of the applicant, but would actually amount to a weekly loss of from $200 to $300. In other words, if compelled to use the premises for conforming purposes, the applicant clearly proved to the Board of Standards and Appeals that such use would be tantamount to confiscation.

" 4. That the neighborhood in question, which at one time had been of a substantial residence and business character, had deteriorated within the past fifteen years. The Board of Standards and Appeals was fully satisfied that the construction of an apartment house on such premises would not rent for a sufficient amount to bring any return to the applicant due to the character of the neighborhood at the present day."

Little need be said respecting the first or the second reason assigned by the Board for its action. The nearby gasoline service stations were existent when such a use of premises in a business district was proscribed in 1925.

The suggestion that traffic congestion would be relieved by the opposition of a corresponding establishment across the street was adequately answered at the hearing by the chairman of the Board: " It is an interesting observation, but does not bear on the question of hardship very much."

The third and fourth reasons given for the action of the Board raise questions the importance of which is attested by recent cases in this court involving much the same inquiry. (*Matter of Chizner* v. *Walsh*, 261 N. Y. 707; *Matter of Proc Building Corp.* v. *Connell*, 264 N. Y. 513; *People ex rel. Arseekay Syndicate, Inc.*, v. *Murdock*, 265 N. Y. 158; *Matter of Eckels* v. *Murdock*, 265 N. Y. 545.) This current of litigation on what is apparently a not uncommon set of facts has persuaded us to state more fully here the reasons for our decision.

The land of the intervener respondent, triangular in shape, has a frontage of one hundred and seventy-eight feet on Fifth avenue. The existing structure, a theatre building with stores and offices, was erected more than twenty years ago. From November, 1931, to March, 1933, gross income from the property in its present condition was $22,700. The carrying charges for that period were $8,700. Thereafter this revenue was substantially reduced. At the hearing the chairman of the Board inquired what the difference was at that time between operating cost and gross return. He elicited only this statement by an officer of the intervener respondent: " I couldn't tell you, but we are losing approximately $200 to $300 a week." Nothing appears to show the value of land or building other than the fact of an assessment at $110,000. This data, it may be premised, does not establish that the property of the intervener respondent can be applied to profitable business use only as a gasoline service station.

No doubt the Board is right in its conclusion that the quality of the locality has so far been transformed that this property (as it now stands) cannot be made to serve

any productive conforming use. We assume, too, that, under present economic conditions, no wise and careful business man would exploit the land by substituting for the existing structure one adapted to conforming ends. Still, we think, the case did not warrant exercise of the delicate jurisdiction to vary, on the basis of unnecessary hardship, the applicable provision of the zoning resolution.

In the cases last cited the plight of the property owner was not substantially different. In each the self-same non-conforming use was sought to be made the means of deliverance from an equal and like exigency, and in all the privilege was held to have been validly denied. It is true that in no instance was more decided than that the particular record sustained the opinion of the Board, but it does not follow, as is now contended, that contrary action by the Board would in any instance have been equally beyond judicial interference.

A variation under section 21 must do " substantial justice." To that end, the section, so far as is practically possible, must affect alike all persons in the same situation. Equality of privileges is a basic principle of government. To cure by exemption in his case the loss resulting to one owner from general deterioration of a neighborhood is to depreciate the adjacent properties of other owners, and is unjust also to those whose properties remain subject to the same restriction in other localities likewise impaired. Moreover, such a theory of variation would in the long run defeat the general purpose of a zoning law. We are in accord with the reasoning of the Supreme Judicial Court of Massachusetts in *Prusick* v. *Board of Appeal* (262 Mass. 451), where RUGG, Ch. J., said for the court (p. 457): " It is manifest from the general purpose underlying any zoning act * * * that the power to vary the application of the act is to be exercised sparingly. Exceptional circumstances alone justify relaxation in peculiar cases of the restrictions imposed by the statute. The dominant design of any zoning act is to promote the

general welfare.   *   *   *   The stability of the neighborhood and the protection of property of others in the vicinity are important considerations.  The financial situation or pecuniary hardship of a single owner affords no adequate ground for putting forth this extraordinary power affecting other property owners as well as the public."

The orders should be reversed, without costs, and the determination of the Board of Standards and Appeals annulled.   (See 266 N. Y. 672.)

CRANE, Ch. J., O'BRIEN, HUBBS and CROUCH, JJ., concur; LEHMAN and FINCH, JJ., not sitting.

Orders reversed, etc.