OPINION OF THE COURT
Chief Judge Cooke.
Dispositive on this appeal is the well-established rule that a landowner who seeks a use variance must demonstrate factually, by dollars and cents proof, an inability to realize a reasonable return under existing permissible uses. Without such evidence, a grant of a use variance by a zoning board is not justified.
Respondent, Ronald Cosser, applied to the Zoning Board of Appeals of the Village of Fayetteville for permission to conduct commercial activity on his residentially zoned land. In support of the application respondent produced the testimony of an architect who indicated that residential construction on the parcel would entail certain special costs and was therefore not competitively feasible. The architect did not specify the amount of added expenses, the total cost of construction, or for that matter render an opinion as to market value in the area. A real estate broker testified that the additional construction costs would make a house on the subject parcel competitively unsaleable. Again, the witness offered no concrete estimate of construction costs and no evidence of competitive value of other residences. Finally, another witness for respondent voiced his opinion that it would be inadvisable to use the land for residential development. No evidence was introduced as to the purchase price of the land or its current value. Based on this record, the zoning board found that it would be “economically unfeasible to build and attempt to sell a residential dwelling on the lot in question” and granted a use variance.
Petitioner commenced this proceeding to invalidate the board’s action. Special Term upheld the determination, but *257 a unanimous Appellate. Division reversed. The order of the Appellate Division should be affirmed.
It should be noted, at the outset, that respondent sought a variance for a prohibited use and not merely exemption from an area restriction. An applicant for a use variance bears a heavier burden of proof than one who desires relaxation of an area limitation (e.g., Matter of Consolidated Edison Co. of N. Y. v Hoffman, 43 NY2d 598, 606-607) and our discussion here relates only to that more stringent standard.
Boards of zoning appeals have traditionally been empowered to grant variances from strict application of zoning ordinances. Although the board possesses discretion to grant or withhold a variance, this court, in early zoning cases, established the minimum showing necessary before that discretion could be exercised. In Matter of Otto v Steinhilber (282 NY 71, 76), the court articulated the classic “unnecessary hardship” test governing grant of use variances: “Before the Board may exercise its discretion and grant a variance upon the ground of unnecssary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variannce will not alter the essential character of the locality.” Because the landowner in Otto failed to demonstrate his inability to realize a reasonable return on the property as zoned, the board’s grant of a use variance was annulled.
It is obvious that, “before a claim that a property is yielding less than a reasonable return may properly be interposed, the reasonable return for the property must first be known or at least be ascertainable” (Matter of Crossroads Recreation v Broz, 4 NY2d 39, 45). Thus, we have required proof, in dollars and cents form, of all matters bearing upon the return available under existing zoning (e.g., id., at pp 44-46; see Matter of Young Women’s Hebrew Assn. v Board of Stds. & Appeals of City of N. Y., 266 NY 270, *258 275; 2 Anderson, New York Zoning Law and Practice, § 18.12; 3 Rathkopf, Zoning and Planning, § 38.03). And, the dollars and cents evidence must show that no permissible use will yield a reasonable return (e.g., Matter of Forrest v Evershed, 7 NY2d 256, 263; Matter of Young Women’s Hebrew Assn. v Board of Stds. & Appeals of City of N. Y., 266 NY 270, 275, supra; 3 Rathkopf, Zoning and Planning, § 38.03[1]).
The dollars and cents rule is a familiar one, regularly applied in cases where a zoning ordinance is alleged to be unconstitutionally confiscatory (e.g., Spears v Berle, 48 NY2d 254; Matter of National Merritt v Weist, 41 NY2d 438, 445-446). Indeed, it has been said that the hardship needed to show entitlement to a use variance and the proof needed to demonstrate an ordinance is confiscatory are much the same (e.g., Williams v Town of Oyster Bay, 32 NY2d 78, 81; 3 Rathkopf, Zoning and Planning, § 38.03, at p 38-26). What is little known, however, is that the rule evolved, not out of the confiscation cases, but rather from the decisions involving variances. Thus, in Williams v Town of Oyster Bay (32 NY2d 78, 81, supra) the court expressly applied by analogy the variance rule to claims of alleged confiscation.
The similarity of the two rules has created confusion, leading some to contend that dollars and cents proof of hardship is required only where a zoning board denies a variance. Under this view, the two standards would be commingled and denial of a variance would be annulled where the landowner showed that he could not receive a reasonable return under any permissible use — i.e. that because of the unique nature of the particular parcel, the current zoning is confiscatory. By contrast, the zoning board would be permitted to grant a variance on some lesser showing.
Our decisions, however, evince a fundamental desire to limit “the power of the board of zoning appeals to grant variances” (2 Anderson, New York Zoning Law and Prac *259 tice, § 18.06, p 12). As early as 1927, Cardozo warned, in the course of an opinion annulling the grant of a variance, that “[t]here has been confided to the Board a delicate jurisdiction and one easily abused * * * judicial review would be reduced to an empty form if the requirement were relaxed that in the return of the proceedings the hardship and its occasion must be exhibited fully and at large” (People ex rel. Fordham Manor Reformed Church v Walsh, 244 NY 280, 290).
From the earliest days this court has annulled grants of use variances where the record failed to disclose concrete proof that the landowner could not realize a reasonable return without the exemption (e.g., Matter of Clark v Board of Zoning Appeals of Town of Hempstead, 301 NY 86, 90; Matter of Otto v Steinhilber, 282 NY 71, supra; Matter of Levy v Board of Stds. & Appeals of City of N. Y., 267 NY 347; Matter of Young Women’s Hebrew Assn. v Board of Stds. & Appeals of City of N. Y., 266 NY 270,, supra; People ex rel. Fordham Manor Reformed Church v Walsh, 244 NY 280, supra). And, this court has consistently rejected as insufficient to justify a grant of a use variance the bare conclusory testimony of witnesses that the property could not yield a reasonable return (e.g., Matter of Forrest v Evershed, 7 NY2d 256, 261-262, supra [testimony of real estate broker that property was unsaleable] ; Matter of Clark v Board of Zoning Appeals of Town of Hempstead, 301 NY 86, 90, supra [testimony of real estate broker that property could not produce a reasonable return as zoned]; cf. Spears v Berle, 48 NY2d 254, 263-264, supra [bare conclusory testimony does not establish lack of reasonable return to support allegation of confiscation]). In short, the court has established general rules governing the granting of variances to ensure that actions of zoning officials do not impair or subvert the public interest. Compliance with these rules is necessary for the granting of a variance to withstand judicial review.
Absent a uniform and rigorous standard, it is apparent that even a well-intentioned zoning board “by piecemeal exemption which ultimately changes the character of the neighborhood * * * [may create] far greater hardships than *260 that which a variance may alleviate” (Matter of Otto v Steinhilber, 282 NY 71, 77-78, supra). Unjustified variances likewise may destroy or diminish the value of nearby property and adversely affect those who obtained “residences in reliance upon the design of thé zoning ordinance” (id., at p 78). These evils, not unlike those associated with the universally condemned practice of spot zoning, have been zealously guarded against by this court.[2]
On the present record, therefore, it must be concluded that the facts adduced at the hearing did not justify the grant of a use variance. The conclusory testimony of the witnesses, unsupported and unsupplemented by underlying concrete facts in dollars and cents form, provides no basis for the board or the courts to evaluate whether the property at issue is being subjected to unnecessary hardship. Indeed, even the dissenting opinion points to no fact on the record that demonstrates the inability of the landowner to realize a reasonable return. While the dissenting opinion notes that the parcel is sloped and will require special preparation for residential development, it does not and cannot specify the extra cost of the preparation, the potential value of a house on the site, the cost of the property and other such information. Without this proof, it is simply impossible to say, other than by pure speculation, whether residential development will or will not yield a reasonable return. Thus, the dissent’s inability to adduce facts on the record in support of its ultimate conclusion illustrates the wisdom and logical iiecessity of the dollars and cents rule in these circumstances.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. Where permissible uses include public ones, the applicant is generally not required to show the property unsuitable for such uses (Matter of Grimpel Assoc. v. Cohalan, 41 NY2d 431, 433-434).

. One commentator has noted that, even where zoning legislation confers broad power to permit variances, the courts have “moved quickly to find strict limitations” (2 Anderson, New York Zoning Law and Practice, § 18.07, p 13). That same authority examined 200 decisions involving judicial review in variance cases and found that “65 percent of the variances granted by boards were reversed by the courts [while] [o]nly 25 percent of the board denials were reversed” (id., § 18.06, p 12).