Douglas GULLICKSON, D.J. Gullickson
and Doyle Rapp, Plaintiffs and
Appellants,

v.

STARK COUNTY BOARD OF COUNTY
COMMISSIONERS, Defendant and
Appellee.

Civ. No. 910037.

Supreme Court of North Dakota.

Sept. 17, 1991.

County Board of County Commissioners [Commissioners] granting Calvin and Correen Wahl a zoning variance to place a mobile home on their lot in Greenvale I Subdivision. We reverse because the Commissioners' decision is arbitrary and in conflict with specific limitations in the zoning ordinance.

On April 17, 1989, Calvin Wahl received a permit to place a mobile home on their lot in Greenvale I Subdivision, Stark County, North Dakota. The Stark County Assistant Zoning Administrator issued the permit pursuant to a 1964 zoning ordinance. After Wahl had moved the mobile home to his property and after the appellants and other residents of Greenvale I Subdivision had protested issuance of the permit, it was discovered that the applicable zoning ordinance, enacted in 1983, zoned Greenvale I Subdivision as "RLD" which prohibited mobile homes.

On July 24, 1989, the Stark County Zoning Board recommended a variance to permit the mobile home. On August 1, 1989, the Commissioners granted the variance. After an appeal, by order of April 24, 1990, the district court set the variance aside for lack of proper notice and remanded for further proceedings. On June 1, 1990, after notice and hearing, the Zoning Board passed "a motion to recommend to the Commissioners to grant the variance for this mobilehome and this one time only." On June 5, 1990, the Commissioners adopted the following resolution again granting a variance:

BE IT RESOLVED BY THE BOARD OF COUNTY COMMISSIONERS, STARK COUNTY, NORTH DAKOTA, THAT THE ZONING ORDINANCE FOR STARK COUNTY ADOPTED APRIL 5, 1983 IS HEREBY AMENDED AS FOLLOWS:

to approve the application of Calvin and Correen Wahl for a variance to the provisions of the Stark County Zoning Ordinance due to personal hardships resulting from the unique conditions affecting Lot 6 of Block 4 of Greenvale Subdivision in the E½ of Sec. 9, Twp. 140, Rge. 96, to allow the present

Chapman & Chapman, Bismarck, for plaintiffs and appellants; argued by Michael Geiermann.

Owen K. Mehrer (argued), State's Atty., Dickinson, for defendant and appellee.

MESCHKE, Justice.

Douglas Gullickson, D.J. Gullickson, and Doyle Rapp appealed from a district court judgment affirming a decision of the Stark

structure, a 14′ × 70′ mobile home with improvements thereon, to remain on the premises.

The district court affirmed the grant of the variance by the Commissioners. In this appeal, the appellants contend that the district court erred in refusing their request to offer further evidence and in affirming the variance.

■■■ Judicial review of a decision of a board of county commissioners is, under the separation of powers, limited to determining if the decision being reviewed is arbitrary, capricious, or unreasonable. *See Pic v. City of Grafton*, 460 N.W.2d 706, 710 (N.D.1990); *Pulkrabek v. Morton County*, 389 N.W.2d 609, 613 (N.D.1986). Our scope of review is the same as the district court's and we "independently determine the propriety of the Board's decision without according any special deference to the district court's review." *Shaw v. Burleigh County*, 286 N.W.2d 792, 797 (N.D.1979). We fully review the interpretation of an ordinance. *Fairmount Twp. Bd. of Supervisors v. Beardmore*, 431 N.W.2d 292 (N.D.1988). A commission's failure to correctly interpret and apply controlling law is arbitrary, capricious, and unreasonable. *See Conway v. Board of County Commissioners*, 349 N.W.2d 398, 400 (N.D.1984). These standards guide our review here.

■■■ A variance "is invoked to avoid the confiscatory effect that would follow a literal enforcement of some term of a zoning ordinance operating to deprive an owner of all beneficial use of his land." 3 E. Yokley, *Zoning Law and Practice* § 21–2 (4th ed. 1979). A variance is intended to waive the strict letter of the zoning ordinance while preserving its spirit and purpose. *Id.* A failure to establish a prerequisite to a variance is fatal. *Id.* "The burden of proof is on the applicant to establish that his land is uniquely affected resulting in unnecessary hardship." *Id.* at § 21–6. It is widely recognized that one important requirement for a variance is "that the hardship must come from circumstances unique to a particular lot, or perhaps a few, and at any rate not from

circumstances general in the neighborhood." 5 *Williams Am. Land Plan.* § 142.01 (1985 Rev). "[T]he unnecessary hardship which will suffice for the granting of a variance must relate to the land rather than to the owner himself." 82 Am.Jur.2d, *Zoning and Planning* § 275 (1976). These general rules relate the limited role of a variance in administration of an ordinance that regulates zoning.

■■■ Zoning ordinances usually contain well-defined standards for granting a variance. "A variance is proper only if there is 1. no adverse effect on public, 2. no adverse effect on neighbors, *and* 3. the property has characteristics making it eligible for a variance. All standards must be met." D. Hagman, *Urban Plan. & Land Dev. Control Law* § 106 (1971). "Even though there is no adverse effect on the public, or even if the public is benefited, neighboring property may be adversely affected by a variance. If so, the variance should not be issued." *Id.* at § 108. A variance should not confer special privileges that are not enjoyed by neighboring property. *Id.* "The terms unique, special, exceptional and extraordinary and the like suggest that a variance is proper only where the property is somehow different from other property, particularly adjacent property. Legislative changes are the appropriate vehicle for a change which would affect a large number of properties." *Id.* at § 109. "If a parcel is not unique but is disadvantaged by a zoning restriction equally with other property in the area, issuance of a variance is improper." *Id.* These widely recognized standards for a variance are reflected in the zoning ordinance of Stark County.

■■■ Several parts of the applicable Stark County Zoning Ordinance are particularly relevant. "Variance" is defined:

113. *Variance.* A relaxation of the terms of the zoning ordinance where such variance will not be contrary to the public interest and where owing to conditions peculiar to the property and not the result of the actions of the applicant and where the literal enforcement of the ordi-

nance would result in unnecessary and undue hardship....

The ordinance explicitly directs that a prohibited use or structure "shall not be allowed by permit or variance":

Sec. 3.06 *Prohibited Uses.* Any uses or structures which are not listed as permitted or conditionally permitted in a zoning district shall be prohibited and shall not be allowed by permit or variance. Certain common problem uses are listed as prohibited for the sake of clarity.

Any person aggrieved by the designation of a use as prohibited may submit a petition for amendment to have said use changed to permitted or conditionally permitted.

This direction is emphasized by a repetition that "[a] variance shall not allow a use otherwise prohibited":

Sec. 3.07 *Variance.* A variance is a relaxation of certain terms of this ordinance where the strict enforcement of these terms shall represent an undue hardship to an individual or company because of their unique circumstances. A variance shall not provide any occupant within a certain district with any advantages or allowances which other district occupants may not enjoy. The health, safety and welfare of the general public shall not be jeopardized through the granting of any variance.

A variance shall not allow a use otherwise prohibited.

.    .    .    .    .

Finally, the ordinance specifies criteria that an application for a variance must contain:

Sec. 9.04 *Variance to the Zoning Ordinance.* Any person may request a variance to certain provisions of the Stark County Zoning Ordinance due to personal hardships resulting from a unique set of conditions affecting the property.... The application procedures are as follows:

\*    \*    \*    \*    \*    \*

2. Complete the application and submit the same to the zoning administrator. The application shall specify:

(a) The unique characteristics of the land or structures in question which makes a variance necessary;

(b) The nature of the applicants [sic] hardship;

(c) That the project as proposed will not create any special privilege for the applicant nor harm or endanger the health, safety and welfare of the general public;

(d) Specific height, lot size, setback, parking, street access, screening or excavating conditions requested.

The concluding criterion, to specify the particular zoning condition to be varied, authorizes variance of only certain kinds of restrictions, which do not include change of a prohibited use or structure.

This record includes substantial evidence of the adverse effects of this variance: (1) "Resident Doyle Rapp stated that property values will depreciate due to a single wide mobile home being in the area;" (2) D.J. Gullickson, who owns the house directly north of the mobile home said it would reduce the value of his property; (3) Gary Bleth, a realtor, said a mobile home "is a detrimental factor," it is "hard to get a good price in a hodge-podge area," "it's a definite problem," and "it takes longer to sell;" (4) Teresa Splichal, a realtor, said this mobile home "will bring down values;" and (5) Kreg Hill said the value of the mobile home "is not near to the others" and "devalues other properties." A written statement by James D. Schmidt indicated opposition to a single wide mobile home and his belief that "[m]obile homes located in a residential area could bring down the value of the present and future homes in the area." In support of the variance, applicant Calvin Wahl said "he is planning on doing more improvements" and "he has a lot of money in it." Some nearby owners supported the variance. Nevertheless, there was substantial evidence that a mobile home would depress property values in this subdivision.[1]

1. "[A] mobile home is conventionally thought of as lowering the social tone of the neighborhood, and so property values." 2 *Williams Am. Land Plan.* § 57.24 (1987 Rev). *See also Wright v.*

The Stark County Zoning Ordinance prohibits placement of a mobile home in Greenvale Subdivision. Ordinance section 3.06 directs that a prohibited use or structure "shall not be allowed by permit or variance." Section 3.07 also directs that "A variance shall not provide any occupant within a certain district with any advantages or allowances which other district occupants may not enjoy." There was no evidence that the Wahls' parcel of land is "somehow different from other property" (D. Hagman, § 109) or that Wahls' "land is uniquely affected resulting in unnecessary hardship" (3 E. Yokley, § 21–6). There was no evidence that any hardship faced by the Wahls "relate[d] to the land rather than to the owner." 82 Am.Jur.2d, *Zoning and Planning* § 275. A variance for a mobile home on the Wahl lot would allow a privilege unavailable to other occupants of the same zoning district. Therefore, we conclude that granting of a variance for a mobile home where such a structure remains prohibited by the applicable ordinance is arbitrary, capricious, and unreasonable.

■■■■■■ An unauthorized variance is the equivalent of spot zoning.

Absent a uniform and rigorous standard, it is apparent that even a well-intentioned zoning board "by piecemeal exemption which ultimately changes the character of the neighborhood * * * [may create] far greater hardships than that which a variance may alleviate" (*Matter of Otto v. Steinhilber*, 282 N.Y. 71, 77–78, 24 N.E.2d 851, *supra*). Unjustified variances likewise may destroy or diminish the value of nearby property and adversely affect those who obtained "residences in reliance upon the design of the zoning ordinance" (*id.*, at p. 78, 24 N.E.2d 851). These evils, not unlike those associated with the universally condemned practice of spot zoning, have

been zealously guarded against by this court.

*Village Bd., Village of Fayetteville v. Jarrold*, 53 N.Y.2d 254, 423 N.E.2d 385, 387–88, 440 N.Y.S.2d 908, 910 (1981). Spot zoning is "the singling out of a lot or a small area for discriminatory or different treatment from that accorded surrounding land which is similar in character." 2 E. Yokley, *Zoning Law & Practice* § 13–2 (4th ed. 1978). Spot zoning "cannot be used 'to favor.'" *Id.* at § 13–3. In *Stutts v. Swaim*, 30 N.C.App. 611, 228 S.E.2d 750 (1976), the court ruled that a city exceeded its authority in rezoning four acres of land from R–1, Residential, which specifically excluded mobile homes, to M–H, Mobile Home, while leaving approximately five hundred surrounding acres owned by the plaintiffs and others zoned R–1, Residential. The court quoted *Blades v. City of Raleigh*, 280 N.C. 531, 549, 187 S.E.2d 35, 45 (1972):

A zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected, is called "spot zoning." It is beyond the authority of the municipality, in the absence of a clear showing of a reasonable basis for such distinction.

228 S.E.2d at 752. Similarly, we believe that an unauthorized variance, like this one, contrary to express directions of the applicable zoning ordinance, is unreasonable spot zoning. Like the zoning immunity unsuccessfully asserted in *City of Fargo v. Harwood Township*, 256 N.W.2d 694, 697 (N.D.1977), an unjustified variance "can undermine the essential purpose of zoning: . . . to rationally coordinate land-

*Michaud*, 160 Me. 164, 200 A.2d 543, 548 (1964), where the court said of mobile homes:

"Such a structure, however elaborately it may be constructed or equipped does not lose its appearance as a mobilehome by becoming affixed to the realty. Due to the necessity of

travel upon the highways to its point of destination it will necessarily have a limited width.... It is common knowledge that such a structure, however elaborately built or landscaped, is often detrimental to surrounding property."

use planning to promote orderly development and preservation of property values."

The Commissioners argue that another section gives them "virtually unlimited authority under its Zoning Ordinance." We disagree. The Commissioners rely upon section 9.06(4) of the Stark County Zoning Ordinance which says that "The Board may vary, modify, or waive any restriction of their ordinance provided that the public safety and welfare is secured." The statute that authorizes county zoning ordinances requires that they "shall be made in accordance with a comprehensive plan...." NDCC 11–33–03. "The comprehensive plan shall be a statement in documented text setting forth explicit goals, objectives, policies, and standards of the jurisdiction to guide public and private development within its control." *Id.* *See also* NDCC 11–33–11. The Commissioners did not amend or revise the policies and standards in their zoning ordinance that regulate variances. 82 Am.Jur.2d, *Zoning and Planning* §§ 267–269. Neither the relevant statutes nor the applicable ordinance authorize isolated and standardless changes of use or structure classifications by variance.

 Legislative decisions pursuant to county zoning ordinances are "subject ... to appellate review to determine whether or not the county's legislative body acted arbitrarily, capriciously, or unreasonably in reaching its decision." *Shaw v. Burleigh County,* 286 N.W.2d at 797. *See also Yokley's Law of Subdivisions* § 70(g) (2nd ed. 1981). A spot variance that is in conflict with the relevant standards of the zoning ordinance is arbitrary, capricious, or unreasonable.

We reverse the decision of the Commissioners granting a variance in conflict with specific limitations in the zoning ordinance.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring in the result.

In addition to the list of reasons for which spot zoning cannot be used, such as "to favor" and to "offer special privileges that are not enjoyed by neighboring property," we add "to correct mistakes made by the zoning administration in issuing a building permit." It appears to me that Stark County employed a pragmatic solution to what began as an unfortunate problem for the Wahls. That solution, to permit them to place a mobile home on their lot, would not have seriously compromised the integrity and value of the other buildings in the subdivision, unless expanded to other instances, which it obviously would not since the permit was an honest mistake in the first instance. The record reflects the mobile home was actually a structure with additions to a single-wide mobile home body and pitched roof added to the body and its additions. Nevertheless, the law, and of necessity, this Court, deals with technicalities and pragmatism should not interfere. I concur in the result.