■ In the Matter of MARGRET DREIKAUSEN et al., Appellants, v ZONING BOARD OF APPEALS OF THE CITY OF LONG BEACH et al., Respondents. [731 NYS2d 54] —In a proceeding pursuant to CPLR article 78 to review a determination of the respondent Zoning Board of Appeals of the City of Long Beach dated July 27, 2000, which, after a hearing, granted the application of the respondent Bay Club of Long Beach, Inc., for a use variance, the appeal is from a judgment of the Supreme Court, Nassau County (McCaffrey, J.), entered May 17, 2001, which dismissed the proceeding. The appellants' notice of appeal from an order of the same court dated February 13, 2001, is deemed to be a premature notice of appeal from the judgment (see, CPLR 5520 [c]).

Ordered that the judgment is affirmed, with one bill of costs.

The respondent Bay Club of Long Beach, Inc. (hereinafter Bay Club), applied to the respondent Zoning Board of Appeals of the City of Long Beach (hereinafter the Zoning Board) for a use variance to make residential use of commercially-zoned property by building 20 condominiums and 20 marina slips. The Zoning Board granted the use variance, and the petitioners commenced this proceeding pursuant to CPLR article 78 to review that determination. The Supreme Court dismissed the proceeding. We affirm.

It is well settled that local zoning boards have broad discretion in considering variance applications, and judicial review is limited to ascertaining whether the action taken by the board was illegal, arbitrary, or an abuse of discretion (see, Matter of Fuhst v Foley, 45 NY2d 441, 444; Matter of Cowan v Kern, 41 NY2d 591, 599). "Absent arbitrariness, it is for locally selected and locally responsible officials to determine where the public interest in zoning lies" (Matter of Cowan v Kern, supra, at 599; see also, Matter of Rosof v Bailin, 237 AD2d 612).

A use variance may be granted upon a showing of unnecessary hardship (see, General City Law § 81-b [3]). To establish unnecessary hardship the applicant must demonstrate, inter alia, for each and every use permitted under the zoning regulations, that the property cannot yield a reasonable return. Such a showing must be based on competent financial evidence "in dollars and cents form" (Matter of Village Bd. v Jarrold, 53 NY2d 254, 257; Matter of Park Hill Residents' Assn. v Cianciulli, 234 AD2d 464). Bay Club sufficiently showed unnecessary hardship and there was a rational basis for the Zoning Board's finding that the property would not yield a reasonable return without the use variance. Accordingly, the variance was properly granted.

The appellants' remaining contention is without merit. Friedmann, McGinity and Adams, JJ., concur.

Goldstein, J. P., dissents and votes to reverse the judgment appealed from, annul the determination dated June 26, 2000, granting a use variance, and deny the application for a use variance, with the following memorandum: The property in question is in a Business A zone where multiple uses are permitted, including "[a] market, restaurant, store or other retail business or service, bank, office, place of assembly" (City of Long Beach Zoning Code § 9-105.15 [a] [1]).

At issue here is whether there was a rational basis to grant a use variance to permit residential use. General City Law § 81-b (3) (b) provides that no use variance shall be granted unless the applicant establishes by "competent financial evidence" that it cannot realize a reasonable return, the lack of a return is substantial, the alleged hardship relating to the property is unique, and the alleged hardship had not been self-created. In this case, Bay Club dismally failed to demonstrate any of these factors.

For 25 years, a marina business known as Marina and The Elks Club was operated on the property. In 1991, Pam-Tom Realty, Inc. (hereinafter Pam-Tom), the owner of the marina business, petitioned for reorganization under chapter 11 of the United States Bankruptcy Code. According to Thomas Keeney, the former president of Pam-Tom, the financial difficulties of Pam-Tom were attributable to the fact that "[i]t was not a good time for the marina business." He noted that 16 other marinas had declared bankruptcy that same year. It appears that some if not most of these 16 other marinas were located outside of the State of New York, and as far away as Oklahoma.

Pam-Tom "put the word out" that the property was for sale. According to Keeney, two parties expressed interest, but ultimately declined to purchase the property. We do not know what year these parties expressed an interest in the property, nor do we know what Pam-Tom's asking price for the property was.

The property was operated as a boat storage, repair, and marina business known as Marineland until the spring of 2000. In the spring of 2000, Pam-Tom accepted the offer of Keystone Design and Construction Corp. (hereinafter Keystone) to purchase the property for residential use. Keystone applied for a use variance to construct single-family attached residences on the property. Its application was denied on the ground that it "failed to submit sufficient financial evidence showing that the property cannot be developed as currently zoned."

Bay Club ultimately purchased the property, closed the Marineland business, and reapplied for a use variance to build 20 condominium units and 20 marina slips on the site. The Nassau County Planning Commission disapproved of the proposal, stating, "[t]he subject property can and should be used for permitted uses set forth in the Business 'A' District standards."

At a public hearing, evidence was elicited that the purchase price of the property, which consisted of 56,000 square feet, was $2,400,000. The new owner expected to derive a profit of about $45,000 per condominium unit, or $900,000. No evidence was submitted as to what return the property would yield if the property were used for any of the uses permitted in "Business A."

Pam-Tom and Lancer Insurance (hereinafter Lancer), which previously considered purchasing the property, both submitted letters to the Zoning Board. Pam-Tom did not reveal its asking price. There is no evidence that it retained any real estate brokers to sell the property, or made any efforts to advertise that the property was up for sale. There is no evidence as to what year Lancer decided not to purchase the property, nor whether conditions remained unchanged since Lancer declined to make an offer.

Pam-Tom claimed that it accepted the offer to sell for residential purposes because it feared it would not be able to pay the real estate taxes on the property if it "tried to hang on with some other commercial entity." However, there is no evidence in the record that Pam-Tom attempted to sell the property for a commercial business use at a price of less than the ultimate purchase price of $2,400,000, nor whether Pam-Tom considered selling the property for less. Indeed, it appears that Pam-Tom decided to "hang on" for the best price, at the highest and best use.

At the conclusion of the hearing, the Zoning Board granted the use variance. In so doing, the Zoning Board acknowledged that the applicant was required to prove by "competent financial evidence" that it "cannot realize a reasonable return," that the lack of return is substantial, that any hardship was unique, and that the alleged hardship was not self-created. The Zoning Board found that the applicant satisfied that burden with evidence that: "The current commercial use of the property failed, went into bankruptcy in 1991, and is no longer a viable use of the property. The owner has sought a purchaser for the property for the better part of a decade and could find no purchaser for any commercial use. Evidence was placed in

the record with regard to two potential purchasers of the property and the multiple reasons why they felt the property could not be developed for commercial use."

The petitioners commenced the instant proceeding to review that determination. The Supreme Court dismissed the proceeding and confirmed the determination, on the ground that the "dire economic history of the site during at least the last 10 years" demonstrated that it could not yield a reasonable return while zoned for business use. That decision is contrary to well-settled law which specifies the requirements for the granting of use variances.

It is well settled that "a landowner who seeks a use variance must demonstrate factually, by dollars and cents proof, an inability to realize a reasonable return under existing permissible uses" (*Matter of Village Bd. v Jarrold,* 53 NY2d 254, 256; *Matter of Bella Vista Apt. Co. v Bennett,* 89 NY2d 465). In the instant case, the only dollars and cents proof is proof of what the property would yield if a use variance were granted. No evidence was tendered as to what constituted a reasonable rate of return from conforming uses (*see, Matter of SoHo Alliance v New York City Bd. of Stds. & Appeals,* 95 NY2d 437).

The fact that the property could yield a higher return, if put to a different use than that permitted under the zoning ordinance, is not a ground for granting a use variance. The owner of property is not entitled to receive a return in keeping with the highest and best use of the property (*see, Matter of Governale v Board of Appeals,* 121 AD2d 539). Nor are the courts required " 'to guarantee the investments of careless land buyers' " (*Matter of Elwood Props. v Bohrer,* 216 AD2d 562, 563, quoting *Matter of Kingsley v Bennett,* 185 AD2d 814, 816). As previously noted, it appears that Pam-Tom decided to "hang on" for the best price, at the highest and best use. Accordingly, there was no demonstration of any hardship.

Further, the so-called "dire economic history" of the property was based upon hearsay conclusory statements, not competent financial evidence. Conclusory statements delineating difficulties with the property are clearly insufficient (*see, Matter of Park Hill Residents' Assn. v Cianciulli,* 234 AD2d 464). A use variance may not be granted merely to ease the personal difficulties of the current landowner (*see, Matter of Conte v Town of Norfolk Zoning Bd. of Appeals,* 261 AD2d 734). Nor are statements delineating general economic conditions sufficient to grant a use variance (*see, Matter of Douglaston Civic Assn. v Klein,* 51 NY2d 963).

The landowner must establish that its alleged hardship is

unique. Assuming that there was hardship here, it does not appear that the hardship, if any, was unique. The fact that marinas in and out of State did not do well in 1991 is totally irrelevant to the question of whether a use variance was warranted in the City of Long Beach in 2000.

Further, it is obvious that any hardship was self-created. A similar application by Keystone was denied on the ground that it "failed to submit sufficient financial evidence showing that the property cannot be developed as currently zoned." Bay Club had full knowledge of this determination and chose to circumvent that decision by changing the name of the applicant to Bay Club and by making a small change in the project's scope. The proof that any so-called hardship was self-created could not have been clearer (*see, Matter of Armonas v Board of Zoning Appeals,* 246 AD2d 646; *Matter of Ferruggia v Zoning Bd. of Appeals,* 233 AD2d 505).

Accordingly, there was no rational basis for granting a use variance. The courts, by upholding this determination, are, in effect, acting as a rubber stamp to actions which make a mockery of the legal requirements for a use variance.